**Ronnie WEIL a/k/a Ronnie Moore, et at., Plaintiffs,**

v.

**The LONG ISLAND SAVINGS BANK, FSB, et al., Defendants.**

**No. 94–CV–1292(TCP)(WDW).**

United States District Court,
E.D. New York.

Jan. 29, 2002.

John B. Amrod, Amrod & Ricci, Garden City, NY, Louis Aloysius Craco, Jr., Davis Weber & Edwards, P.C., New York City, for plaintiffs.

Russell E. Brooks, Milbank, Tweed, Hadley, McCloy, New York City, for Long Island Savings Bank, FSB, John J. Conefry, Jr., William E. Viklund, Lawrence W. Peters, Bruce M. Barnet, Troy J. Baydala, Clarence M. Buxton, Edwin M. Canuso, Richard F. Chapdelaine, Brian J. Conway, Robert J. Conway, Frederick De Matteis, George R. Irvin, Robert S. Swanson, James B. Tormey, Leo J. Waters, Seth H. Waugh, Donald D. Wenk, Astoria Financial Corp., defendants.

Paul F. Corcoran, Davis & Gilbert, New York City, for Conway & Ryan, P.C., Power, Meehan & Petrelli, P.C., James J. Conway, Jr., Power Meehan & Power, P.C., James J. Power, Pierce J. Power, Robert F. Meehan, defendants.

Joel Cohen, Stroock & Stroock & Lavan, LLP, New York City, for Susan Conway Petrelli, defendant.

Thomas P. Puccio, New York City, for James J. Conway, III, defendant.

## MEMORANDUM AND ORDER

PLATT, District Judge.

Lead Class Counsel, Hogan & Hartson, L.L.P. ("Hogan & Hartson"), and Co-Class Counsel, Amrod & Van der Waag, L.L.P. ("Amrod & Van der Waag"), move pursuant to Rule 23(e) of the Federal Rules of Civil Procedure for an award of attorneys' fees as provided for in the settlement agreement ("Settlement") approved by this Court on January 16, 2002. For the reasons stated below, Hogan & Hartson is awarded $4,216,740.00 in fees and $504,538.23 in expenses, and Amrod & Van der Waag is awarded $700,079.58 in fees and expenses.

## BACKGROUND

The factual background of this case is set forth in the Court's Order Approving the Settlement of January 16, 2002. *See Weil v. Long Island Savings Bank*, 188 F.Supp.2d 258, 262–63 (E.D.N.Y.2002). Familiarity with that Order is assumed. Accordingly, the Court will state only those facts necessary to resolve the current attorneys' fee question.

### A. The Early Case

John Amrod ("Amrod") commenced this action on behalf of his daughter-in-law, Ronnie Weil, and others similarly situated, in March of 1994 after reading an article in *Newsday* that discussed the alleged Conway kickback scheme. (Class Lead Counsel Mem. in Supp.App. for Attorneys' Fees at 2; Pet. on App. to Fix Fees and Disbursements at 1.) On June 8, 1994, Amrod & Van der Waag[1] filed an Amended Complaint. (Pet. on App. to Fix Fees and Disbursements at 3.) Amrod & Van der Waag began petitioning the Office of Thrift Supervision ("OTS") for information about its investigation into Conway and

---

1. Amrod & Van der Waag was called Amrod & Ricci at the time it filed the Amended Complaint. (Class Lead Counsel Mem. in Supp.App. for Attorneys' Fees at 3 n. 5.) It remained Amrod & Ricci until some time in 1998 when it became Amrod & Van der Waag. (Class Lead Counsel Mem. in Supp. App. for Attorneys' Fees at 3 n. 5.)

the alleged kickback scheme shortly after commencing this action. (Class Lead Counsel Mem. in Supp.App. for Attorneys' Fees at 2; Pet. on App. to Fix Fees and Disbursements at 2–3.)

On October 5, 1994, Amrod and his partner traveled to Milbank, Tweed, Hadley & McCloy, L.L.P.'s New York offices to conduct settlement negotiations. (Pet. on App. to Fix Fees and Disbursements at 5.) Those negotiations were unsuccessful. (Pet. on App. to Fix Fees and Disbursements at 5.)

On June 27, 1995, Amrod began investigating *Doe v. Poe and Roe,* an action commenced by Conway in the Supreme Court for the State of New York, County of Suffolk ("Supreme Court") to prevent the Long Island Savings Bank's attorneys from disclosing statements made by Conway to that bank. (Pet. on App. to Fix Fees and Disbursements at 7.) The records in that action were sealed, and Amrod & Van der Waag's motions to vacate the sealing order were denied. (Pet. on App. to Fix Fees and Disbursements at 8–9.)

Towards the end of 1996, Amrod's partner, Mr. Steinberg, left Amrod & Van der Waag. (Pet. on App. to Fix Fees and Disbursements at 10.) However, Amrod continued to litigate this action.

On November 24, 1997, the Supreme Court of the State of New York, Appellate Division, Second Department ("Second Department") reversed the Supreme Court's order denying Amrod & Van der Waag's previous motions and vacated the sealing order. (Pet. on App. to Fix Fees and Disbursements at 11.)

## B. Hogan & Hartson's Involvement and the Agreement Between the Firms

On April 1, 1998, Amrod contacted James Szymanski of Davis, Weber & Edwards, P.C.[2] (Pet. on App. to Fix Fees and Disbursements at 11.) Amrod sought that firm's assistance because it had more skill and experience litigating class action cases such as this one. (Class Lead Counsel Mem. in Supp.App. for Attorneys' Fees at 2–3.)

On July 2, 1998, before Hogan & Hartson was engaged as co-counsel, the New York Court of Appeals affirmed the Second Department's order of November 24, 1997, vacating the Supreme Court's sealing order. (Pet. on App. to Fix Fees and Disbursements at 12.) Consequently, Amrod gained access to records that materially furthered this case.

On July 23, 1998, Amrod & Van der Waag engaged Hogan & Hartson as lead Class Counsel ("Agreement").[3] (Pet. on App. to Fix Fees and Disbursements Ex. 1.) Under the Agreement, Hogan & Hartson assumed the day-to-day responsibilities of the litigation and agreed to fund the action as well. (Pet. on App. to Fix Fees and Disbursements Ex. 1.)

The Agreement also required Hogan & Hartson and Amrod & Van der Waag to submit joint fee applications seeking court apportionment of attorneys' fees. (Pet. on App. to Fix Fees and Disbursements Ex. 1.) In the event that a court neglected to apportion any fee awards, Hogan & Hartson was given the option of: (1) dividing

---

**2.** Davis, Weber & Edwards, P.C. eventually dissolved and the attorneys handling the case joined Hogan & Hartson. (Class Lead Counsel Mem. in Supp.App. for Attorneys' Fees at 3.) Accordingly, Davis, Weber & Edwards, P.C. will hereafter be referred to as Hogan & Hartson.

**3.** On May 7, 2001, this Court appointed Hogan & Hartson as Class Lead Counsel. (Class Lead Counsel Mem. in Supp.App. for Attorneys' Fees at 3 n. 5.)

the fees 60%/40% among the firms with the greater share passing to Hogan & Hartson ("Option A"); or (2) allowing each firm its actual time billed at its customary rates, with any remainder being apportioned 70%/30% in Hogan & Hartson's favor ("Option B"). (Pet. on App. to Fix Fees and Disbursements Ex. 1.)

At the Fairness Hearing conducted on January 16, 2002, the Court concluded that Hogan & Hartson and Amrod & Van der Waag had jointly applied for fees and expenses. The Court also announced its intention to apportion fees among the two firms. That apportionment is explained below.

## DISCUSSION

### A. Settlements and Attorneys' Fees

■ Generally, parties finance their own litigation and pay their own attorneys' fees. *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47 (2d Cir.2000). However, when attorneys create common funds for the benefit of a class, the attorneys may be paid reasonable fee awards out of the common fund they created. *Id.; Savoie v. Merchants Bank*, 166 F.3d 456, 460 (2d Cir.1999); *see Gwozdzinnsky v. Sandler Assocs.*, 1998 WL 538064, *2, 1998 U.S.App. LEXIS 20471, at *6 (2d Cir. March 13, 1998).

Attorneys' fees may be awarded by either the lodestar or percentage of recovery method. *Goldberger*, 209 F.3d at 47. The lodestar method awards attorneys' fees based on: (1) the number of hours billed; (2) times a reasonable rate; (3) with the figure adjusted by a multiplier where appropriate. *See id.* at 47; *Savoie*, 166 F.3d at 460. Several factors determine whether multipliers are appropriate. *See Goldberger*, 209 F.3d at 48; *Savoie*, 166 F.3d at 460. Those factors include: (1) litigation risk; (2) attorney skill; and (3) issue complexity. *Detroit v. Grinnell Corp.*, 560 F.2d 1093, 1098 (2d Cir.1977); *see Goldberger*, 209 F.3d at 47; *Savoie*, 166 F.3d at 460.

The percentage of recovery method awards a set percentage of the total class recovery as attorneys' fees. *Goldberger*, 209 F.3d at 48; *Savoie*, 166 F.3d at 460. The same factors used to calculate lodestar multipliers determine what is an appropriate percentage to award. *Goldberger*, 209 F.3d at 48.

■ Fees must be reasonable under the circumstances of the case regardless of the award method employed. *Id.* What is reasonable lies in the sound discretion of the District Court. *Id.* Moreover, that discretion is afforded heightened deference because "[t]he district court, which is intimately familiar with the nuances of the case, is in a far better position to make … [award] decisions than is an appellate court, which must work from a cold record." *Id.* (quoting *In re Bolar Pharm. Co. Sec. Litig.*, 966 F.2d 731, 732 (2d Cir. 1992)).

### B. Actual Fee and Expense Awards

The Court awards Hogan & Hartson $4,216,740.00 in attorneys' fees and $504,538.23 in expenses. It also awards Amrod & Van der Waag $700,079.58 in fees and expenses. These awards are equitable and compensate the two firms in accordance with the Agreement.

#### 1. Hogan & Hartson

■ Hogan & Hartson requests a total fee award of $4,216,740.00. It reached this figure by applying the lodestar method with a multiplier of two. The Court concurs that the lodestar method is the appropriate means of awarding Hogan & Hartson attorneys' fees and therefore declines to apply the percentage of recovery method. *See Goldberger*, 209 F.3d at 47.

Hogan & Hartson's attorneys expended 7604.4 hours on this case and its paralegals spent 1390 hours on the same. (Class Lead Counsel's Mem. in Supp. Motion for Attorneys' Fees at 12.) Hogan & Hartson billed those hours at its customary rates, which, at the time the fees were earned, ranged from $100 to $160 an hour for summer associates to $371 to $450 for the senior partner in charge of the case. (Class Lead Counsel's Mem. in Supp. Motion for Attorneys' Fees at 12–13.) This results in a lodestar amount of $2,108,370.00. *See Goldberger*, 209 F.3d at 47.

The total number of hours Hogan & Hartson spent on this matter from 1998 on is reasonable in light of the size, complexity and duration of this case. Moreover, the rates at which Hogan & Hartson billed those hours is not patently objectionable, particularly since Defendants effectively agreed to those rates in the Settlement. Accordingly, Hogan & Hartson's lodestar figure of $2,108,370.00 is acceptable.

A multiplier of two is permissible in this case as well. *See Goldberger*, 209 F.3d at 47; *Savoie*, 166 F.3d at 460. As outlined in this Court's Order of January 16, 2002, this case involved serious litigation risk, required skill to prosecute and raised many complex issues. *See Grinnell Corp.*, 560 F.2d at 1098; *see also Goldberger*, 209 F.3d at 47; *Savoie*, 166 F.3d at 460. Hogan & Hartson financially accepted those risks and used its skill and expertise to resolve several complex issues in the Class' favor. *See Grinnell Corp.*, 560 F.2d at

1098; *see also Goldberger*, 209 F.3d at 47; *Savoie*, 166 F.3d at 460. Accordingly, a multiplier of two is appropriate, particularly since Defendants agreed to it in the Settlement.

Therefore, Hogan & Hartson's fee request is approved under the lodestar method. *See Goldberger*, 209 F.3d at 47; *Savoie*, 166 F.3d at 460. It is awarded the full $4,216,740.00 that the Settlement calls for. The Court also awards it the $504,538.23 in expenses that it requested.

### 2. Amrod & Van der Waag's Fees

The Court also calculated Amrod & Van der Waag's fee award using a variation of the lodestar method. The variation employed by the Court was appropriate under the unique facts of this case.

Amrod & Van der Waag requests a total lodestar figure of $558,033.14.[4] While Amrod & Van der Waag did not specifically request it, the Court applied a multiplier to Amrod & Van der Waag's lodestar amount because Amrod & Van der Waag commenced this case and sustained for several years before Hogan & Hartson joined the action.

The Court calculated Amrod & Van der Waag's fee award by adding Hogan & Hartson's pre-multiplier lodestar amount of $2,108,370.00 to Amrod & Van der Waag's lodestar amount of $558,033.14 for a total lodestar fee of $2,666,403.14 ("Total Lodestar Fee"). The Court then subtracted the Total Lodestar Fee from the total potential fee award of $5,000,000.00 ("Total

---

4. Amrod & Van der Waag billed 1,713.52 hours at rates ranging from $300 $400 an hour for senior attorneys to $15 $20 per hour for law clerks for a total of $557,071.50 in attorneys' fees. (Pet. on App. to Fix Fees and Disbursements at 38–40.) It also incurred "disbursements of $5,751.36, $961.64 of which ... [it] received as taxable costs on appeal." The Court interprets that latter statement to mean that Amrod & Van der Waag is entitled to only $961.64 of its total disbursements and that it has not yet received those funds. Accordingly, Amrod & Van der Waag demands a total of $558, 033.14, which the Court treats as its lodestar amount. *See Goldberger*, 209 F.3d at 48 (relating District Court's significant discretion in awarding reasonable attorneys' fees).

Potential Fee Award") that Defendants agreed to in the Settlement for a difference of $2,333,596.86. That $2,333,596.86 represents the theoretical excess ("Theoretical Excess") that would have existed between the Total Potential Fee Award and the Total Lodestar Fee had the Court awarded only lodestar amounts without multipliers.

The Court, guided by Option B of the Agreement, then calculated 30% of the Theoretical Excess and reached a figure of $700,079.58. The Court, exercising its considerable discretion, *see Goldberger*, 209 F.3d at 48, chose that figure as Amrod & Van der Waag's fee award.

■ The additional $142,046.44 awarded to Amrod & Van der Waag over its lodestar amount of $558,033.14 is a multiplier. *See id.; Savoie*, 166 F.3d at 460. Amrod & Van der Waag is entitled to a multiplier in this case, because it shouldered the litigation risks for four years and utilized its skill and experience to resolve complex issues in the Class' favor. *See Grinnell Corp.*, 560 F.2d at 1098; *Goldberger*, 209 F.3d at 47; *Savoie*, 166 F.3d at 460. A multiplier of .25 [5] is fair compensation for Amrod & Van der Waag's efforts in instituting, sponsoring and building this case, sustaining it until Hogan & Hartson was retained and thereafter supervising and monitoring the case to until its conclusion.

Accordingly, the Court awards Amrod & Van der Waag $700,079.58 in fees and expenses. The Court does not independently award Amrod & Van der Waag expenses because expenses were already figured into the Court's calculations. *See* n. 4 *supra.*

---

**5.** That multiplier is calculated by dividing the $142,046.44 excess award by the $558,033.14 lodestar amount.

## CONCLUSION

Hogan & Hartson is awarded $4,216,740.00 in attorneys' fees and $504,538.23 in expenses. Amrod & Van der Waag is awarded $700,079.58 in fees and expenses.

SO ORDERED.