**Stephen R. STEINBERG, individually and on behalf of all others similarly situated, Plaintiffs,**

**v.**

**NATIONWIDE MUTUAL INSURANCE COMPANY, Defendants.**

**No. 05–CV–3340 (ADS)(ARL).**

United States District Court, E.D. New York.

May 5, 2009.

Pomerantz Haudek Block Grossman & Gross, LLP, by Robert J. Axelrod, Esq., D. Brian Hufford, Esq., Stanley M. Grossman, Esq., Jay Douglas Dean, Esq., Susan Jessica Weiswasser, Esq., of Counsel, New York, NY, for the Class.

Nelson Levine de Luca & Horst, LLP, by Michael R. Nelson, Esq., Darren L. Harrison, Esq., Craig A. Cohen, Esq., Claudia McCarron, Esq., of Counsel, Blue Bell, PA, for Defendant.

### AMENDED MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

After nearly a decade of litigation, the parties to this class action have negotiated a fair and reasonable Settlement Agreement ("the Settlement"). The only remaining issue that the Court must address before approving the Settlement is a motion by Stephen Steinberg ("Steinberg") and the law firm of Pomerantz Haudek Block Grossman & Gross ("Pomerantz") for reasonable attorneys' fees and costs.

## I. BACKGROUND

Although the parties' familiarity with the underlying facts and extensive procedural history of the case is presumed, a brief review is in order.

### A. Nationwide's Betterment Deductions

The underlying action arose from an automobile insurance contract that Nationwide sold to Steinberg for his leased 1999 BMW 740i. In September of 1999, the engine in Steinberg's BMW suffered water damage. On behalf of Nationwide, an insurance adjuster consented to the replacement of the engine and agreed to pay the repairing dealer an unspecified amount for the replacement engine and the related installation costs.

After the dealer replaced the engine, Nationwide tendered a check to Steinberg that did not reflect the amount that Steinberg, the adjuster, and the dealer agreed upon. In particular, Nationwide had subtracted a $563.17 "betterment" charge reflecting the difference in value between the used engine and the new replacement engine. Steinberg alleged that this betterment deduction was not disclosed in or authorized by his insurance policy with Nationwide. Steinberg further alleged that Nationwide had taken betterment deductions from millions of insureds with policies similar to his since 1993.

### B. Steinberg I

On October 13, 1999, Steinberg filed an action ("Steinberg I") on behalf of himself and a putative class against Nationwide in

New York State Supreme Court, Suffolk County, seeking damages and injunctive relief for Nationwide's alleged breach of the insurance contracts. On Nationwide's application, the case was removed to this Court on November 24, 1999. On April 6, 2000, the Court denied Steinberg's motion to remand the case to the state court. The Court found that, with reasonable certainty, the imposition of an injunction prohibiting the practice of deducting betterment charges would cause economic harm to Nationwide in excess of $75,000. Accordingly, the Court concluded that the plaintiffs request for injunctive relief met the jurisdictional minimum of $75,000.

With the permission of the Court, Steinberg filed a Second Amended Complaint on September 26, 2001. On October 5, 2001, Nationwide moved to dismiss the Second Amended Complaint on the ground that this Court lacked subject matter jurisdiction. Nationwide pointed out that Steinberg's Second Amended Complaint did not request the injunctive relief that this Court found was necessary to satisfy the amount in controversy element of diversity jurisdiction. Steinberg conceded that the request for injunctive relief had been inadvertently omitted from his Second Amended Complaint. On October 24, 2001, Steinberg requested permission to supplement the pleading pursuant to FRCP 15(a) so as to include the request for injunctive relief.

On July 27, 2002, the Court granted Nationwide's motion to dismiss the Second Amended Complaint. However, the Court also permitted Steinberg to file an amended complaint for the limited purpose of reinserting a request for injunctive relief. On August 7, 2002, Steinberg filed the Third Amended Complaint. In an order dated September 4, 2004, the Court granted Steinberg's motion for class certification pursuant to Fed. R.Civ.P. 23, certifying a national class of all Nationwide policyholders who had been injured by Nationwide's imposition of a betterment charge.

Nationwide subsequently filed a petition under Rule 23(f) with the Second Circuit for leave to appeal the class certification. The Second Circuit elected not to hear the appeal. Instead, on December 30, 2004, the Second Circuit ruled, sua sponte, that the Court lacked subject matter jurisdiction finding that the monetary value of the injunctive relief sought by Steinberg should not have been considered in determining whether the jurisdictional threshold had been met. On March 16, 2005, pursuant to the Second Circuit's instructions, this Court remanded the case to the state court and dismissed Steinberg I.

## C. Steinberg II

On July 15, 2005, the Plaintiff filed Steinberg II in this Court, based upon the same underlying facts as Steinberg I, alleging identical claims and seeking identical forms of relief. On March 7, 2006, 418 F.Supp.2d 215, the Court denied Nationwide's motion to dismiss the complaint finding that it had subject matter jurisdiction under the Class Action Fairness Act of 2005. 28 U.S.C. § 1332(d). Thereafter, the Court granted Steinberg's motion for class certification. The Second Circuit denied Nationwide's petition for an interlocutory appeal on February 20, 2007.

After extensive discovery and multiple settlement negotiations, the parties appeared at a status conference with the Court on June 3, 2008. At the conference, the parties agreed to a class period beginning on January 1, 1993 in order to ensure that all putative class members in Steinberg I could obtain the same relief as the class members in Steinberg II. In November of 2008, after further extensive negotiations, the parties agreed to a settlement.

### D. The Settlement Agreement

On November 25, 2008, Steinberg moved for preliminary approval of the Settlement, certification of the settlement class, and for approval of the class notice form. The Court granted Steinberg's motion after conducting a hearing on December 8, 2008. Thereafter, notices were sent to class members. According to Pomerantz, to this point there have been nearly 10,000 claims filed by class members.

The Settlement provides that Nationwide will pay 50% of the total betterment charges that it deducted from the automobile repair estimates of class members who submit valid claims. Pursuant to the terms of the Settlement, Nationwide has also agreed to amend the insurance forms that it submits for approval by state insurance departments to fully disclose the betterment adjustments. The Settlement also provides that Nationwide will pay attorneys' fees and costs to Pomerantz and Steinberg in a total amount not to exceed $2.75 million.

## II. DISCUSSION

### A. Standard

■ "[W]here an attorney succeeds in creating a common fund from which members of a class are compensated for a common injury inflicted on the class," the attorneys whose considerable effort created the fund are entitled to a reasonable fee set by the Court. *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47 (2d Cir.2000). In setting attorneys' fees in class actions, courts have used either the lodestar method or awarded fees based upon a percentage of the common fund. *Id.* at 47. Here, the latter method would be unworkable because the exact amount paid into the common fund is as yet undetermined. The Court's analysis, then, will be guided by the lodestar.

In *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,* the Second Circuit purported to abandon the longstanding use of the lodestar calculation but left the method for determining appropriate attorneys' fees essentially undisturbed. 522 F.3d 182, 190 (2d Cir. 2008). In the wake of *Arbor Hill,* district courts charged with awarding attorneys' fees must now determine the "presumptively reasonable fee" by reference to various case-specific variables. *Id.* at 190. However, whether referred to as a lodestar or a presumptively reasonable fee, the attorneys' fee calculation is essentially the same: the district court must multiply a reasonable hourly rate by the hours reasonably expended on the matter. *Id.* at 189.

■ "Once that initial computation has been made, the district court may, in its discretion, increase the lodestar by applying a multiplier," based upon six factors. *Goldberger,* 209 F.3d at 47. These factors, as set forth by the Second Circuit, include: "(1) counsel's time and labor; (2) the litigation's complexities and magnitude; (3) the litigation risks; (4) quality of representation; (5) the relationship of the requested fee to the settlement; and (6) considerations of public policy." *Id.* at 50. Ultimately, a district court enjoys broad discretion in determining the appropriate amount in attorneys' fees. *Id.* at 47–48.

### B. Reasonable Attorneys' Fees and Costs

According to the undisputed billing records, Pomerantz invested a total of 3,023.67 billable hours over the course of seven years litigating this case. Pomerantz has proposed billing rates ranging from $125 for legal assistants up to $790 for a senior partner. By multiplying the hours reasonably expended by Pomerantz's proposed billing rates, the Court has arrived at a lodestar figure of $1,489,416. Steinberg, a lawyer who represented him-

self and the class from the filing of the action through 2002, has sought to recover a portion of the award based upon the 277 hours he devoted to the case. Steinberg has proposed that his time be credited at a rate of $450 per hour which would leave him with a lodestar figure of $124,650. Notably, Nationwide does not dispute the billing rates proposed by Pomerantz or Steinberg.

Pomerantz and Steinberg have also requested that the Court exercise its discretion to increase the lodestar figure by applying a multiplier of 1.79 % to increase the total award of costs and fees to $2.75 million—the maximum amount consented to by Nationwide in the parties' Settlement. To determine the propriety of this request, the Court must analyze the *Goldberger* factors. 209 F.3d at 50.

### 1. The Time and Labor Expended

As noted above, Pomerantz spent a considerable amount of time litigating this case. The Court is aware, both from the Plaintiffs' counsels' submissions, and the Court's own supervision of this case, that a considerable amount of time in this case was spent: (1) engaging in extensive motion practice; (2) conducting discovery; and (3) participating in complicated negotiations. Steinberg also spent a considerable amount of time on the matter (277 hours) handling the case by himself for three years.

### 2. The Magnitude and Complexities of the Litigation

It is beyond serious contention that this case presented significant challenges to both sides. Although the underlying facts were not particularly complex, the procedural history of this case—including extensive motion practice, discovery, and complicated negotiations—reflects the considerable magnitude of this litigation.

### 3. The Risks Involved in the Litigation

Courts in the Second Circuit have recognized that the attendant risks of a particular case are a critical factor to be considered in setting an award of attorneys' fees. *Goldberger,* 209 F.3d at 54; *see In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.,* 2007 WL 313474, at *16 (S.D.N.Y. Feb. 1, 2007) (noting that the risks involved in litigation may be the "foremost" factor for a court in determining reasonable attorneys' fees). Here, Pomerantz and Steinberg represented the class on a contingent fee basis, investing a significant amount of time and money without any guarantee of compensation in a case that was vigorously defended. Further, at least until the Second Circuit denied Nationwide's petition to challenge class certification in February of 2007, the chance of negotiating a settlement was not particularly good. Accordingly, the Court believes that, at least throughout most of the litigation, Pomerantz and Steinberg faced a real risk of non-recovery.

### 4. The Quality of the Representation

"To determine the 'quality of the representation,' courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Taft v. Ackermans,* 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007). The quality of the representation in this case is evident from the extensive record. Steinberg has 48 years of litigation experience and has devoted a significant part of his practice to class-action work. The Pomerantz firm and the attorneys who worked on the case also have considerable experience in litigating class-actions and are very well-regarded in the field.

With respect to the recovery obtained, although the class's total recovery is impossible to calculate at this point, it is

significant that nearly 10,000 claims have been filed by class members. This impressive number and the fact that only one class member objected to the Settlement, reflects that counsel achieved an excellent result for the class.

### 5. The Requested Fee in Relation to the Settlement

"The fifth factor cited by the Second Circuit for determining the appropriate percentage fee award in class actions is the 'requested fee in relation to the settlement,' i.e., whether the fee represents a fair percentage of the settlement achieved." *In re Telik, Inc. Securities Litigation,* 576 F.Supp.2d 570, 593 (S.D.N.Y.2008) (citing *Goldberger,* 209 F.3d at 50). Here, the relationship between the requested fee and the Settlement is somewhat difficult to assess because it is not clear, ultimately, how much Nationwide will pay into the common fund. However, the Court notes with approval that the fee award will not be drawn from the common fund but will be paid directly by Nationwide. In this regard, the fee award, however substantial, will have no effect on the monetary relief afforded to class members. *See Ling v. Cantley & Sedacca, L.L.P.,* 2006 WL 290477, at *3 (S.D.N.Y. Feb. 8, 2006) (observing that courts should guard against providing a windfall to class counsel at the expense of the class).

### 6. Public Policy Considerations

The Court is also mindful that public policy concerns were fully considered by Pomerantz in negotiating the Settlement. As part of the Settlement, Nationwide has agreed to define and disclose the practice of deducting betterment adjustments in future insurance policies. This negotiated concession will benefit consumers by providing them more information with which to compare the rates of competing insurers.

Overall, the *Goldberger* factors tip in favor of enhancing the lodestar figure with a multiplier. As noted above, Pomerantz and Steinberg have requested that the Court apply a multiplier of 1.79% that would bring the total award of costs and attorneys' fees to $2.75 million. However, the Court believes that such a multiplier would be excessive in this case in light of the fact the lodestar figure is already inflated due to the high billable rates proposed by both Pomerantz and Steinberg.

Although Nationwide has offered no objection to these proposed hourly rates, the Court believes they are at the extreme high end of what courts in the Eastern District of New York typically award in complex cases. *See Weil v. Long Island Sav. Bank,* 188 F.Supp.2d 265, 269 (E.D.N.Y.2002) (approving rates ranging from $371.00 to $450.00 per hour for partners at Hogan & Hartson in a consumer class action); *Arbor Hill,* 522 F.3d at 190 (citing *Polk v. N.Y. State Dep't of Corr. Servs.,* 722 F.2d 23, 25 (2d Cir.1983)) (noting that in determining the prevailing hourly rate in the community, the "community" to which the district courts should look is the one in which the district court sits). Here, Pomerantz has proposed billable rates for associates ranging from $270 up to $500 and billable rates for partners ranging from $585 up to $790. Steinberg has proposed that the Court credit his time at a rate of $450 per hour.

The Court finds that these high billable rates have inflated the lodestar to a point where Pomerantz and Steinberg need not benefit from a significant multiplier in order to be adequately compensated for the work performed. At the same time, the Court is of the view that the capable representation provided to the class in this case does warrant the application of a smaller multiplier. Accordingly, the Court will apply a multiplier of 1.5 to Pomer-

antz's lodestar figure of $1,489,416, for an award of attorneys' fees in the total sum of $2,234,124. The Court will apply the same multiplier to Steinberg's lodestar figure of $124,650, for an award of attorneys' fees in the total sum of $186,975. The Court also awards costs and expenses in the requested amounts of $77,155.45 for Pomerantz and $1,929.79 for Steinberg.

## III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that Pomerantz is awarded attorneys' fees in the amount of $2,234,124 and costs in the amount of $77,155.45 for the total sum of $2,311,279.45, and it is further

**ORDERED,** that Steinberg is awarded attorneys' fees in the amount of $186,975 and costs in the amount of $1,929.79 for the total sum of $188,904.79, and it is further

**ORDERED,** that the parties are directed to submit a proposed amended order: (1) approving the settlement; (2) certifying the class for settlement purposes; (3) reflecting the amount in attorneys' fees and costs set forth in this Order; and (4) dismissing this action with prejudice, subject to the terms of the settlement.

**SO ORDERED.**