**Rhonda DUPLER, on behalf of herself and all others similarly situated, Plaintiff,**

v.

**COSTCO WHOLESALE CORPORATION, Defendant.**

**No. 06–CV–3141 (JFB)(ETB).**

United States District Court, E.D. New York.

Jan. 31, 2008.

David J. Meiselman, Esq., Jeffrey I. Carton, Esq., Michael A. Berg, Esq., Meiselman, Denlea, Packman, Carton & Eberz, White Plains, NY, for Plaintiff.

James M. Bergin, Esq., Mark David McPherson, Esq., Morrison & Foerster, New York, NY, for Defendant.

MEMORANDUM AND ORDER

JOSEPH F. BIANCO, District Judge.

Plaintiff Rhonda Dupler (hereinafter, "Ms. Dupler" or "plaintiff") brings this action against Costco Wholesale Corporation (hereinafter, "Costco" or "defendant"), alleging that Costco's backdating policy with respect to membership renewals is a deceptive trade practice in violation of New York General Business Law Section § 349, is a breach of Costco's membership contract, and results in Costco's unjust enrichment. Plaintiff has moved, pursuant to Fed.R.Civ.P. 23, to certify a class and for the appointment of class counsel. For the reasons that follow, the motion is granted.

I. BACKGROUND AND PROCEDURAL HISTORY

A. The Complaint

Defendant operates an international chain of membership retail "warehouses," mainly under the "Costco Wholesale" name. (Am. Compl. ¶ 1.) Costco generates profits not only from selling merchandise, but also through charging membership fees for "annual memberships." (Id. ¶ 11.)

The annual memberships sold by defendant to customers are a pre-condition of access to Costco's Wholesale warehouse-style stores; only paid members have the right to purchase merchandise at Costco warehouses.[1] (Id. ¶ 1.) Accordingly, after the 12–month membership period lapses, members are required to renew their membership in order to retain their shopping privileges. (Id.) Certain customers who decide to pur-

chase a new annual membership after expiration of the old membership are provided with a term of membership less than 12 months. (Id. ¶ 2.) Specifically, plaintiff alleges that, when a member renews his or her membership before the expiration date or up to six months after the expiration date, it was Costco's policy and practice to extend his or her membership for a 12–month period commencing as of the expiration date of the old membership (hereinafter, the "Renewal Policy"). (Id. ¶ 3.) By illustration, if a membership expired on March 31, 2004, and the member decided to renew his membership on June 30, 2004, his 12–month renewed annual membership commenced on March 31, 2004 (rather than June 30, 2004) and expired on March 31, 2005. Plaintiff alleges that, in such circumstances, although the member believed that the one-year renewal period would begin on the date of renewal, Costco was backdating the 12–month period to the date of expiration (which had already passed), thereby immediately depriving the renewing member of some portion of the 12–month renewal period without full disclosure.

Plaintiff asserts that, as result of Costco's "deceptive, fraudulent, and improper" actions, members such as plaintiff have been deprived of the benefit of their bargain (i.e., a full 12–month membership), resulting in defendant's alleged improper and unlawful monetary gain and benefit. (Id. ¶ 3.) Plaintiff asserts that she was not informed of this alleged backdating policy, nor did she give her consent. (Id. ¶ 17.)

B. Proposed Representative Plaintiff

1. Rhonda Dupler

Proposed class representative plaintiff Ms. Dupler is a citizen and resident of the State of New York, County of Nassau. (Id. ¶ 8.) Ms. Dupler purchased a Costco annual membership at a Costco warehouse store in or about March 2003. (Id.) In 2004 and 2005, Ms. Dupler renewed her membership. (Id.) On March 31, 2006, Ms. Dupler's membership expired. (Id.) She subsequently re-

---

1. According to the complaint, annual membership prices range from $45 for a "Gold Star" individual membership or a "Business" member-
ship to $100 for an "Executive" membership that offers certain rebates not available to other members. (Id. ¶ 11.)

newed her membership in May 2006.[2] (*Id.*) Ms. Dupler asserts that, without her knowledge or consent, Costco backdated her membership renewal so that it began on April 1, 2006. (*Id.*) Accordingly, plaintiff claims that she was deprived of more than one month of her full "12–month" annual membership. (*Id.*) Plaintiff further claims that other similarly situated members have been and continue to be subjected to this backdating policy without adequate notice, consent or bargained-for approval. (*Id.* ¶ 18.)

## C. The Membership Agreement

It is undisputed that Costco utilizes a uniform "Privileges and Conditions of Your Costco Membership" document (hereinafter, "Privileges and Conditions of Membership") for all class members. In pertinent part, the document provides:

**5: Membership Cards and Fees**

– Membership fee is for one twelve (12) month period from the date of enrollment of the primary cardholder.

**6: Renewing, Adding or Deleting Cards**

– You will receive a renewal notice by mail each year. Renewal fees are due no later than the last day of the month your membership expires.

– We will automatically extend your membership for an additional 12 months from your expiration date upon receiving your renewal fees.

(Bergin Decl., Exh. 3)

## D. Procedural History

Plaintiff commenced this class action in New York Supreme Court, Nassau County, on May 9, 2006. Costco removed the action to this Court, and plaintiff subsequently filed her amended complaint on November 27, 2006. Defendant filed an Answer to the Amended Complaint on December 14, 2006. On September 10, 2007, plaintiff moved for Class Certification and Appointment of Class Counsel. Oral argument was held on December 14, 2007. On January 16, 2008, defendant submitted a letter providing sup-

plemental authority, to which plaintiff responded on January 18, 2008.

## II. DISCUSSION

Plaintiff seeks certification under Fed. R.Civ.P. 23(b)(2) and (b)(3) of the following class:

> All New York citizens and residents who, from March 1, 2001 to the present purchased and paid for a new 12–month term of Costco membership (including Gold Star (individual), Business and Executive memberships) subsequent to the expiration of their prior annual memberships, and whose new 12 month membership terms were backdated by Costco to on or about the expiration date of their prior memberships.
>
> Excluded from the Class are Defendant; any parent, subsidiary, or affiliate of Defendant; any entity in which Defendant has or had a controlling interest, or which Defendant otherwise controls or controlled; and any officer, director, employee, legal representative, predecessor, successor, or assignee of Defendant.

(hereinafter, the "Class" or the "Proposed Class"). Defendant objects to the Proposed Class, arguing that common issues are not present, that the proposed named plaintiff's claim is not typical, that the named plaintiff is an inadequate class representative, that common issues of law or fact do not predominate, and that the injunctive relief sought is not predominant.

As set forth below, the Court concludes that, because the requirements of Fed. R.Civ.P. 23(a) and (b)(2) have been met, the motion for class certification and appointment of class counsel is granted.

## A. Applicable Law

Rule 23(a) of the Federal Rules of Civil Procedure sets forth a four-part test for certifying a class: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the

---

**2.** It should be noted that Ms. Dupler allowed her membership to expire again on March 31, 2007. (Dupler Tr. 70:21 to 71:14.) Ms. Dupler subse- quently renewed her membership on April 13, 2007. (*Id.* at 68:16 to 69:3.)

claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a)(1)-(4).

In seeking class certification, plaintiff must first demonstrate that all of the requirements of Fed.R.Civ.P. 23(a) have been satisfied. *See Gen. Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 132–33 (2d Cir. 2001); *Caridad v. Metro–North Commuter R.R.,* 191 F.3d 283, 291 (2d Cir.1999); *Weil v. Long Island Sav. Bank, FSB,* 200 F.R.D. 164, 168 (E.D.N.Y.2001); *In re Playmobil Antitrust Litig.,* 35 F.Supp.2d 231, 238 (E.D.N.Y.1998). Second, plaintiff must show that the putative class falls within one of the three categories set forth in Rule 23(b). *In re Visa Check/MasterMoney,* 280 F.3d at 133. Plaintiff here seeks certification under Rule 23(b)(2) and (3).

The Second Circuit recently emphasized that the district court must conduct a "rigorous analysis" to determine "that every Rule 23 requirement" is met before certifying a class. *In re Initial Public Offering Sec. Litig.,* 471 F.3d 24, 33 & n. 3 (2d Cir.2006) (citing *Falcon,* 457 U.S. at 160–61, 102 S.Ct. 2364). "[T]here is no reason to lessen a district court's obligation to make a determination that every Rule 23 requirement is met before certifying a class just because of some or even full overlap of that requirement with a merits issue." *In re Initial Public Offering Sec. Litig.,* 471 F.3d at 41. Thus, it is not sufficient for plaintiffs to make merely "some showing" that the requirements of Rule 23 have been met. *Id.* at 35–36 (citing and distinguishing *Caridad,* 191 F.3d at 292 and *In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d at 134–35). Instead, the following standard applies to class certification motions in this circuit:

> (1) a district judge may certify a class only after making determinations that each of the Rule 23 requirements has been met; (2) such determinations can be made only if the judge resolves factual disputes relevant to each Rule 23 requirement and finds that whatever underlying facts are relevant to a particular Rule 23 requirement

have been established and is persuaded to rule, based on the relevant facts and the applicable legal standard, that the requirement is met; (3) the obligation to make such determinations is not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement; (4) in making such determinations, a district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement; and (5) a district judge has ample discretion to circumscribe both the extent of discovery concerning Rule 23 requirements and the extent of a hearing to determine whether such requirements are met in order to assure that a class certification motion does not become a pretext for a partial trial of the merits.

*In re Initial Public Offering Sec. Litig.,* 471 F.3d at 41. The Court now turns to the Rule 23 analysis in the instant case within the legal framework articulated by the Second Circuit.

### 1. Numerosity

 Rule 23(a)(1) requires that the proposed class be "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). "Impracticability means difficulty or inconvenience of joinder [not] . . . impossibility of joinder," *In re Blech Sec. Litig.,* 187 F.R.D. 97, 103 (S.D.N.Y.1999) (citation omitted), and the Second Circuit has observed that "numerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir.1995), *cert. denied,* 515 U.S. 1122, 115 S.Ct. 2277, 132 L.Ed.2d 281 (1995) (citing 1 Newberg on Class Actions § 3.05 (2d ed.1985)); *see also Presbyterian Church of Sudan v. Talisman Energy, Inc.,* 226 F.R.D. 456, 466 (S.D.N.Y. 2005) ("Numerosity is presumed when a class consists of forty or more members.").

In the instant case, the numerosity requirement is clearly satisfied. Defendants do not contest in their opposition papers that this requirement is met. Indeed, plaintiff alleges that between 2001 and 2006 more than 1.1 million Costco memberships were backdated. (Plaintiff's Memorandum of Law

at 14.) Numerosity, therefore, is easily satisfied.

### 2. Common Questions of Law & Fact

 A single common issue of law will satisfy the commonality requirement. *Monaco v. Stone,* 187 F.R.D. 50, 61 (E.D.N.Y. 1999). A common issue of law will be found if plaintiffs "identify some unifying thread among the members' claims...." *Id.* A court may find a common issue of law even though there exists "some factual variation among class members' specific grievances...." *In re Playmobil,* 35 F.Supp.2d at 240.

 Plaintiff alleges that there are questions of law and fact that are common to the entire class, including, *inter alia,* the following: (1) whether Costco has a generally applicable policy and practice of backdating memberships that are "renewed" after a lapse of time; (2) whether Costco members assent to the backdating policy by purchasing memberships that are subject to Costco's Privileges and Conditions of Membership; (3) whether Costco adequately discloses its backdating policy in the Privileges and Conditions of Membership; (4) whether Costco's conduct in backdating memberships without adequate disclosure or consent is a "consumer oriented" practice within the meaning of N.Y. General Business Law § 349; (5) whether Costco's conduct in backdating memberships without adequate disclosure or consent is a "deceptive act or practice" within the meaning of N.Y. General Business Law § 349; (6) whether Costco's failure to grant 12 full months of membership privileges in exchange for a full "annual" fee is a breach of its standard membership contract, as set forth in the Privileges and Conditions of Membership; and (7) whether Costco has been unjustly enriched by its policy and practice of backdating memberships. Plaintiff alleges that these questions are common to all class members because they involve the existence of generally applicable corporate policy and the meaning of the Privileges and Conditions of Membership, which apply to all Costco members.

In opposing certification, defendant argues that the common questions of law and fact proffered by plaintiff are merely restatements of plaintiff's causes of action. Defendant further argues that those common questions of law and fact which are more specific would require a highly individualized analysis. As set forth below, the Court disagrees.

Because the plaintiff has demonstrated that (1) all putative class members are bound by the same Privileges and Conditions of Membership; and (2) Costco's practice of backdating memberships for all memberships renewed within six months of the expiration date is a common course of conduct that has been applied to all putative class members, the Court finds that common questions of law and fact exist among the putative class. The core of this lawsuit is whether Costco's Renewal Policy is adequately disclosed to Costco members in the Privileges and Conditions of Membership. (Pl.'s Reply at 10.) An overwhelming number of courts have held that claims arising out of form contracts are particularly appropriate for class action treatment. *See, e.g., Steinberg v. Nationwide Mut. Ins. Co.,* 224 F.R.D. 67, 74 (E.D.N.Y.2004); *see also Flanagan v. Allstate Ins. Co.,* 242 F.R.D. 421, 428 (N.D.Ill. 2007) ("Claims arising out of form contracts are particularly appropriate for class action treatment.... Additionally, our courts have often found a common nucleus of operative facts when the defendants are, as here, alleged to have directed standardized conduct toward the putative class members.") (internal citations omitted); *In re Universal Serv. Fund Tel. Billing Practices Litig.,* 219 F.R.D. 661, 667 (D.Kan.2004) (finding commonality satisfied where plaintiffs' claims arose from allegations that defendants' breached the terms and conditions of its consumer contracts); *In re Tri–State Crematory Litig.,* 215 F.R.D. 660, 692 (N.D.Ga. 2003) (finding commonality requirement satisfied in breach of contract claim involving form contracts); *Jones v. Am. Gen. Life & Acc. Ins. Co.,* 213 F.R.D. 689, 694–95 (S.D.Ga.2002) (same); *Haroco, Inc. v. Am. Nat'l Bank & Trust Co.,* 121 F.R.D. 664, 669 (N.D.Ill.1988) (finding commonality agreement satisfied where plaintiffs' claims arose from allegations of common practice and rights derived from form contracts; case presented "the classic case for treatment as a

class action") (quotation and citation omitted).

Based on the allegations in the Amended Complaint, each membership is subject to the uniform "Privileges and Conditions of Your Costco Membership" document. *See In re Playmobil,* 35 F.Supp.2d at 240 (holding that common issues of law exist even if there exists "some factual *variation* among class members' specific grievances"). The issue of whether or not the Renewal Policy is adequately disclosed to Costco members is common to all members of the Proposed Class. In short, the Court finds that plaintiffs have sufficiently alleged common questions of law and fact.

### 3. Typicality

■ Plaintiff's claims must be typical of the class. Fed.R.Civ.P. 23(a)(3). This requirement is satisfied if the plaintiff shows that "the representative plaintiff's claims are based on the same legal theory and arise from the same practice or course of conduct as the other class members." *In re Playmobil,* 35 F.Supp.2d at 241.

■ Defendant argues that the representative plaintiff's claims are factually distinguishable from the rest of the proposed class. In particular, defendant contends: (1) that plaintiff's Section 349 claim is atypical because plaintiff only renewed her membership after her brother, a lawyer prosecuting the class action against Costco, informed her of Costco's Renewal Policy; (2) plaintiff failed to show that other class members were exposed to the same alleged misrepresentation that forms the basis of her Section 349 claim; (3) plaintiff is atypical of the putative breach of contract class because, although she never read the terms of the membership agreement, she knew about the Renewal Policy; (4) all of plaintiff's causes of action are subject to a unique defense under the voluntary payment doctrine.

■ "Where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation," certification for the class is improper because he or she can no longer act in the best interest of the class. *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 222 F.3d

52, 59 (2d Cir.2000). A primary underlying concern is the "danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." *Gary Plastic Packaging Corp. v. Merrill Lynch,* 903 F.2d 176, 180 (2d Cir.1990).

■ Defendant asserts that the voluntary payment doctrine may be asserted against Ms. Dupler as a defense to her claims. The voluntary payment doctrine "bars recovery of payments voluntarily made 'with full knowledge of the facts.'" *Solomon v. Bell Atl. Corp.,* 9 A.D.3d 49, 55, 777 N.Y.S.2d 50, 56 (N.Y.App. Div. 1st Dep't 2004) (quoting *Dillon v. U–A Columbia Cablevision of Westchester, Inc.,* 100 N.Y.2d 525, 526, 760 N.Y.S.2d 726, 727, 790 N.E.2d 1155 (N.Y.2003)). This doctrine would bar recovery by any Costco customer who renewed their expired membership knowing that Costco would backdate their membership.

Some courts have found the voluntary payment doctrine to preclude certification of a class. For example, in *Newman v. RCN Telecom Services, Inc.,* the court found that the class representative paid his internet bill despite having knowledge that his service was inadequate. 238 F.R.D. 57, 78–79 (S.D.N.Y.2006) The court held that Newman was subject to an affirmative defense based on the voluntary payment doctrine that raised individual issues about his own claims and, therefore, denied class certification. *Id.; see also Gary Plastic Packaging Corp.,* 903 F.2d at 179–80 (holding class certification properly denied because plaintiff was inappropriate class representative given its claim was subject to several unique defenses, including the fact that it continued to purchase disputed CDs despite having knowledge of the alleged fraud) *cert. denied,* 498 U.S. 1025, 111 S.Ct. 675, 112 L.Ed.2d 667; *In re Currency Conversion Fee Antitrust Litig.,* 230 F.R.D. 303, 308 (S.D.N.Y.2004) (holding class certification of § 349 claim not appropriate where plaintiff was atypical because he continued to use his credit card after discovering that defendant was charging him an extra currency conversion fee every time he used it), *modified on other grounds,* No. 03 Civ. 2843(WHP), 2005 WL 1705285 (S.D.N.Y. July

22, 2005); *Dillon v. U–A Columbia Cablevision of Westchester, Inc.*, 100 N.Y.2d at 526, 760 N.Y.S.2d at 727, 790 N.E.2d 1155 (N.Y. 2003) (holding plaintiff's purported class action complaint barred based on voluntary payment doctrine when facts revealed that she paid defendant cable company the challenged extra fee with full knowledge of when and why the fee would be charged); *Solomon v. Bell Atl. Corp.*, 9 A.D.3d at 55, 777 N.Y.S.2d at 56 (holding voluntary payment doctrine "would bar recovery by any subscriber who, having experienced slow service . . . ., continued to use defendants' DSL service.").

In her deposition, Ms. Dupler denied defendant's contention that she knew at the time that she renewed her membership in May of 2006 that Costco would apply its backdating policy to her membership. (*See* Dupler Tr. 56:3–57:22; 108:10–110:17). Thus, unlike the situation in other cases referenced above where it was undisputed that the plaintiff had full knowledge of the facts and thus the application of the voluntary payment doctrine was clear, that issue is in dispute in this case. Moreover, the fact that a disputed issue exists as to this particular plaintiff on this defense does not mean that the typicality requirement cannot be met. Instead, the voluntary payment defense, like all potential defenses, must be examined in the context of the entire case to determine whether the defenses as to the named plaintiff are so atypical or complex that they threaten to become the focus of the litigation, thereby eviscerating the common issues of law and fact and undermining the class representative's ability to act in the best interest of the class.

In the instant case, as a threshold matter, it is not entirely clear that the voluntary payment doctrine will be an atypical defense. In fact, Costco suggests in its motion papers that the voluntary payment doctrine may be an issue for many members of the proposed class because "approximately 55% of class members renewed late multiple times during the class period" and, therefore, may have been aware of Costco's policy based upon these multiple renewals. (Def.'s Opp. Br. at 34.) Thus, far from being atypical, the vol-

untary payment doctrine issue may be common to numerous class members. *See, e.g., Davis v. Homecomings Fin.*, No. C05–1466RSL, 2006 WL 2927702, at *5 (W.D.Wash. Oct.10, 2006) ("[A]lthough the presence of *unique* defenses can undermine the typicality element, [defendants'] defenses to plaintiff's claims are not unique. Instead, it will no doubt assert the same defenses, including the voluntary payment doctrine, for most if not all of the class members' claims. Therefore, the assertion of that defense does not render plaintiff's claim atypical.") (emphasis in original).

In any event, even assuming *arguendo* that the voluntary payment issue related to Ms. Dupler (because of her conversation with her brother before renewing with Costco) is unique in its application to this case, the Court does not view this potential factual issue as so complex that it will threaten to become the focus of the litigation or affect her ability to act in the best interest of the class. Despite this factual issue, her claims are based on the same legal theory as the Proposed Class and arise from the same course of conduct or practice. Therefore, the voluntary payment doctrine defense that Costco wishes to assert against Ms. Dupler does not render her claim atypical.

█ Defendant also argues in its opposition that plaintiff's claim is atypical because it is based upon a May 8, 2006 call with a Costco representative, as well as Costco's Privileges and Conditions of Membership, which Costco contends Ms. Dupler never read. In particular, Costco argues that the existence of this call and any alleged misrepresentations in this call, make plaintiff atypical of the class because other class members have simply relied on the words of the Privileges and Conditions of Membership. The Court finds this argument unpersuasive. Defendant's argument is based upon a misunderstanding of the core of plaintiff's claim. Plaintiff is not basing her claim on a misrepresentation in the May 8th telephone call; rather, plaintiff is alleging that the same unlawful conduct, *i.e.* the failure to adequately disclose the backdating policy in the Privileges and Conditions of Membership, was directed against all members of the Class.

The fact that Ms. Dupler has an added allegation—*i.e.,* that the policy, in addition to being alleged absent from the Privileges and Conditions of Membership, also was not disclosed in the May 8th telephone call—does not make her claim atypical. As the Second Circuit has noted, "[w]hen it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux v. Celani,* 987 F.2d 931, 936–37 (2d Cir.1993); *see also In re Vivendi Universal, S.A. Sec. Litig,* 242 F.R.D. 76, 85 (S.D.N.Y.2007) (*"In re Vivendi"*); *In re NASDAQ Market–Makers Antitrust Litig.,* 172 F.R.D. 119, 126–27 (S.D.N.Y. 1997). Here, because her claim, like all members of the Proposed Class, focuses on the absence of certain language in the uniform Privileges and Conditions of Membership, the typicality requirement is met despite the minor variations in her situation added by the telephone call. *Cf. Moore v. PaineWebber, Inc.,* 306 F.3d 1247 (2d Cir. 2002) (upholding district court's denial of class certification in RICO and fraud case alleging misrepresentations in sale of insurance policies because oral representations made to each class member must be assessed on an individualized basis, such that common questions did not predominate); *In re LifeUSA Holding, Inc.,* 242 F.3d 136, 144–47 (3d Cir.2001) (finding abuse of discretion in district court's certification of class when sales of deferred annuity contracts were neither uniform nor scripted, and marketing materials were neither uniform nor used by agents uniformly, and thus individualized issues defeated commonality and predominance requirements).

Finally, the fact that Ms. Dupler never read the Privileges and Conditions of Membership does not make her claim atypical. On this issue, it is important to emphasize that plaintiffs' theory of the case is not one of misrepresentations in the Privileges and Conditions of Membership; rather, it is one of omission and nondisclosure. Given that theory, it does not appear that it will be critical to the case in connection with the alleged claims to individually examine whether Ms. Dupler or any other plaintiff actually reviewed the terms of the Privileges and Conditions of Membership.

In short, the question for the Court, at this stage, is whether "the named plaintiff's claim and the class claims are so inter-related that the interest of the class members will be fairly and adequately protected in their absence." *Caridad,* 191 F.3d at 291 (noting that commonality and typicality "tend to merge"). Based on the allegations in the amended complaint, the claims of the proposed class representatives are inter-related and common issues of law and fact exist between the proposed class representative and the rest of the proposed class. *See In re Playmobil,* 35 F.Supp.2d at 240. The situation here is analogous to the circumstances in *Gross v. Ticketmaster,* No. 600504/02, 2004 WL 2339808, at *3 (N.Y.Sup.Ct. Sept.15, 2004), in which the court certified a class action—including claims of breach of contract, unjust enrichment, and deceptive practices under Section 349—where Ticketmaster allegedly failed to disclose that concert tickets were obstructed view seats. In reaching that decision, the court explained:

> A class consisting of concert ticket holders who received advance notice that their seats were inadequate for viewing purposes, share common material issues of law and fact, relating to the fact of purchase, the issue of notice, and the suitability of the seats. Moreover, plaintiff's claims would be typical to those of the class members; to wit, deceptive business practices, breach of contract, or unjust enrichment.

*Id.* at *3 (citation omitted).

Accordingly, the Court concludes that the class representative's claims are typical of the Class and this requirement is met. *See DeBoer v. Mellon Mortg. Co.,* 64 F.3d 1171, 1174 (8th Cir.1995) ("The burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff."); *Robidoux,* 987 F.2d at 936; *In re Oxford Health Plans, Inc., Sec. Litig.,* 191 F.R.D. 369, 375 (S.D.N.Y.2000).

### 4. Adequacy of Representation

"The final prerequisite for class certification under Rule 23(a) is that the repre-

sentative parties will fairly and adequately protect the interests of the class." *Harris v. Initial Sec., Inc.,* No. 05 Civ. 3873, 2007 WL 703868, at *5, 2007 U.S. Dist. LEXIS 18397, at *19 (S.D.N.Y. Mar. 7, 2007) "This requires that the proposed class representative ... have an interest in vigorously pursuing the claims of the class, and ... have no interests antagonistic to the interests of other class members." *Id.* (citing *Denney v. Deutsche Bank AG,* 443 F.3d 253, 268 (2d Cir.2006)).

"In addition, the court should assess the class representatives' credibility and trustworthiness, and whether they have sufficient knowledge of and involvement in the case so that they are able and willing to protect interests of class against possible competing interests of attorneys." *Harris,* 2007 WL 703868, at *5, 2007 U.S. Dist. LEXIS 18397, at *19. This requirement also necessitates the Court inquire as to whether plaintiffs' counsel is qualified, experienced and generally able to conduct the litigation. *See, e.g., Trautz v. Weisman,* 846 F.Supp. 1160, 1167 (S.D.N.Y.1994). Defendant does not dispute counsel for plaintiff's ability to conduct the litigation. Defendant does, however, object to the proposed class representative, Ms. Dupler. Defendant contends that Ms. Dupler cannot adequately represent the class because: (1) her credibility is open to question; and (2) she is too closely affiliated with her counsel.

In determining whether plaintiff can adequately represent the interests of the class, courts are free to consider the honesty and trustworthiness of the class representative. *See Savino v. Computer Credit Inc.,* 173 F.R.D. 346, 353 (E.D.N.Y.1997). Where the court finds the class representative is not credible, adequacy of representation is absent. *Compare Kline v. Wolf,* 702 F.2d 400, 403 (2d Cir.1983) (upholding decision to deny role as class representatives when "testimony on an issue critical to one of their two causes of action was subject to sharp attack"); *with Cromer Fin. Ltd. v. Berger,* 205 F.R.D. 113, 125 (S.D.N.Y.2001) (refusing to bar class representatives on grounds of credibility where it was not clear that plaintiffs lied or fabricated testimony). As set forth below, although defendant challenges whether Ms.

Dupler is an adequate class representative, the Court does not find any of the arguments to be persuasive.

Defendant asserts that Ms. Dupler does not have the requisite knowledge of the action to be an adequate class representative. "[C]lass representatives are inadequately informed only when they have so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys." *In re Omnicom Group, Inc. Sec. Litig.,* No. 02 Civ. 4483(RCC), 2007 WL 1300781, at *6 (S.D.N.Y. May 1, 2007) (internal citations and quotation omitted). Defendant cites two examples of testimony in the deposition in which defendant argues that plaintiff misstated the nature of her claim. In both instances, the record establishes that Ms. Dupler corrected her misstatement. (Dupler Tr. 110:4–11, 160:23–25.) Further, the Second Circuit requires a class representative to understand the subject of the class action, but allows that class representative to rely on class counsel's expertise for litigating the case. *See Baffa v. Donaldson,* 222 F.3d 52, 62 (2d Cir.2000); *see also In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig.,* 209 F.R.D. 353, 356 (S.D.N.Y.2002) (noting that a proposed class representative meets qualifications as such when he understands "the basic nature of the lawsuit, and, while he does not grasp the nuances of a class action, his interests are clearly aligned with the class members whom he represents"); *In re Playmobil,* 35 F.Supp.2d at 242 ("Courts do not require the representative plaintiff to be the best of all possible plaintiffs or to be especially knowledgeable, intelligent, or possessing a detailed understanding of the legal or factual basis on which a class action can be maintained."); *accord Uniondale Beer Co. v. Anheuser–Busch, Inc.,* 117 F.R.D. 340, 343–44 (E.D.N.Y.1987); *Michaels v. Ambassador Group, Inc.,* 110 F.R.D. 84, 90 (E.D.N.Y. 1986). After a careful review of the relevant testimony, in its entirety, the Court does not find that the examples proffered by the defendant establish that Ms. Dupler has "so little knowledge and involvement" as to justi-

fy a finding that she is an inadequate representative.

Defendant further argues that Ms. Dupler is an inadequate class representative because she is too closely affiliated with class counsel. Defendant asserts that plaintiff's brother, Mr. Held, is an attorney associated with the firm seeking to represent the Class. Defendant does concede, however, that Ms. Dupler testified that Mr. Held is no longer employed with the prospective class counsel. (Dupler Tr. 58:16–19.) Defendant still contends that substantial conflicts exist because Mr. Held was involved in initiating this suit and may be called as a witness, as well as the assertion that he is counsel of record in a similar California class action and likely would have an interest in this case resulting in a sizable award for his former firm. Plaintiff responds by emphasizing that Mr. Held is no longer employed with prospective class counsel and Ms. Dupler has no financial conflict.

■ As a threshold matter, the Court notes that there is no *per se* rule against relatives of class counsel serving as class representatives. *See In re Frontier Ins. Group,* 172 F.R.D. 31, 44 (E.D.N.Y.1997); *See also Lewis v. Goldsmith,* 95 F.R.D. 15, 20 (D.N.J.1982) (finding no impropriety where any benefit from fee award was indirect at best). Second, in *Fischer v. International Telephone & Telegraph Corporation,* the court stated that in analyzing a conflict such as this: "the touchstone for denial of class action status in each case (with one exception) is that the plaintiff might have an interest in the legal fees that the attorney might ultimately seek." 72 F.R.D. 170, 173 (E.D.N.Y.1976). In this instance, plaintiff has no direct interest or likelihood of obtaining a portion of the attorney fees awarded to class counsel. Mr. Held is no longer employed by the prospective class counsel. Thus, neither plaintiff nor Mr. Held has any direct or indirect monetary interest in the attorney fees which may result. *Cf. Shroder v. Suburban Coastal Corp.,* 729 F.2d 1371, 1375 (11th Cir.1984) (finding that where a plaintiff is an employee of firm acting as class counsel, he likely is more "interested in maximizing the return to his employer" and securing his "future employment" than he is

about the welfare of the unnamed class members). The Court finds that any potential conflict, as it relates to her non-financial relationship with her brother and his involvement in the similar California litigation, is too attenuated and speculative to preclude Ms. Dupler from being a class representative and concludes that Ms. Dupler will adequately represent the Class. In sum, the Court finds no grounds exist to find Ms. Dupler cannot adequately represent the Proposed Class.

### 5. Class Certification Under Fed.R.Civ.P. 23(b)(3)

When the prerequisites of Rule 23(a) have been met, a class may be certified if it fits within one of the three categories in Rule 23(b). Fed.R.Civ.P. 23(b). "The requirement of 'rigorous analysis' to ensure 'actual, not presumed conformance' with Rule 23(a) applies with 'equal force to all Rule 23 requirements, including those set forth in Rule 23(b)(3).' " *In re Vivendi,* 242 F.R.D. at 83 (quoting *In re Initial Public Offering Sec. Litig.,* 471 F.3d at 33 & n. 3). Plaintiff contends that the class should be certified under Rule 23(b)(2), which applies to classes in which "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole," or Rule 23(b)(3), which applies when "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

### a. Predominance of Common Issues of Law and Fact

■ As a general matter, the "Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *In re Nassau County Strip Search Cases,* 461 F.3d 219, 225 (2d Cir.2006) (quoting *In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d at 136). The Second Circuit has held that "[c]lass-wide issues predominate if resolution of some of the legal or factual

questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d at 1252. The predominance inquiry is, therefore, related to the commonality and typicality prongs of Rule 23(a), but it "is a more demanding criterion than the commonality inquiry under Rule 23(a)." *Id.; see also* 7A Wright, Miller & Kane, Federal Practice & Procedure: Civil 3d § 1763 (2005) ("[P]redominance obviously is a more stringent standard than that prescribed by Rule 23(a)(2)....").

Defendant argues that individual issues of law and fact predominate including: (1) whether there was a materially deceptive representation or omission as required under Section 349; (2) individualized showings to prove causation; (3) proof of injury; (4) whether the voluntary payment doctrine bars certain putative class members' claims; and (5) whether certain Costco business members lack standing to bring a Section 349 claim.

### (1) Deceptive Trade Practices Under Section 349

 N.Y. Gen. Bus. Law § 349(a) states that "deceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state are hereby declared unlawful." [3] To state a claim under N.Y. Gen. Bus. Law § 349, a plaintiff must allege (1) the act or

practice was consumer-oriented, (2) the act or practice was misleading in a material respect, and (3) the plaintiff was injured as a result. *See Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir.2000) (citing *Oswego Laborers'*, 623 N.Y.S.2d 529, 647 N.E.2d at 741). "Deceptive acts" are defined objectively, as acts " 'likely to mislead a reasonable consumer acting reasonably under the circumstances.' " *Id.* (quoting *Oswego Laborers'*, 85 N.Y.2d at 25, 623 N.Y.S.2d 529, 647 N.E.2d 741). Moreover, under New York law, "[t]he Court of Appeals has been clear that a plaintiff *need not show* that s/he *relied* on the misrepresentations in order to have a claim under GBL § 349." *Whalen v. Pfizer, Inc.*, 9 Misc.3d 1124(A), 2005 WL 2875291, at *3 (N.Y.Sup.Ct. Sept.22, 2005) (citations omitted) (emphasis in original); *see, e.g., Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29, 709 N.Y.S.2d 892, 731 N.E.2d 608 (2000) ("as we have repeatedly stated, reliance is not an element of a section 349 claim."). Finally, an omission can be actionable under Section 349. *See, e.g., Henry v. Rehab Plus Inc.*, 404 F.Supp.2d 435, 445 (E.D.N.Y.2005) ("Presumably plaintiff relies not on an express misrepresentation but on a misrepresentation by an omission or failure to disclose the substance of the NIOSH findings. An omission can give rise to a claim under § 349.") (citation omitted).

Plaintiff alleges that Costco violated Section 349 in failing to adequately disclose Costco's backdating policy. Defendant ar-

---

**3.** Defendant argues that certain "business members" (that is, Costco memberships in the name of a business, rather than individuals) lack standing under Section 349 because this statute only applies to "consumer oriented" acts or practices. Defendant, however, misinterprets the statute. Courts have held that claims meet the consumer-orientation requirement of the statute if "some harm to the public at large is at issue." *Consol. Risk Servs., Inc. v. Auto. Dealers WC Self Ins. Trust*, No. 06–CV–0871 (FJS/RFT), 2007 U.S. Dist. LEXIS 22097, at *25 (N.D.N.Y. Mar. 27, 2007) (quoting *Excellus Health Plan, Inc. v. Tran*, 287 F.Supp.2d 167, 179 (W.D.N.Y.2003)) (stating that the central issue is whether the practice affects the public interest, not whether the suit was brought by a consumer or a competitor) (internal quotation marks omitted). Accordingly, " '[p]rivate contract disputes unique to the parties.... would not fall within the ambit of the statute.' " *N.Y. Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d

308, 639 N.Y.S.2d 283, 662 N.E.2d 763, 770 (1995) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 623 N.Y.S.2d 529, 647 N.E.2d 741, 744 (1995) (*Oswego Laborers'*)); *accord DePasquale v. Allstate Ins. Co.*, 179 F.Supp.2d 51, 58 (E.D.N.Y.2002). However, as this Court noted in *M.V.B. Collison, Inc., v. Allstate Ins. Co.*, "the fact that [the plaintiff] is a business ... does not undermine its ability to bring a claim pursuant to Section 349." No. 07 Civ. 0187(JFB) (JO), 2007 WL 2288046, at *4 (E.D.N.Y Aug. 8, 2007) (citing *Greenspan v. Allstate Ins. Co.*, 937 F.Supp. 288, 294 (S.D.N.Y.1996)). Here, the alleged deceptive practice affects hundreds of thousands of consumers and is not limited to one individual transaction between Costco and a private business unit. Thus, Costco business members are not precluded from such a lawsuit under Section 349.

gues that courts routinely reject class treatment for Section 349 claims because individual issues, such as whether the entire class saw the same misrepresentation, predominate over common issues. *See e.g. Newman*, 238 F.R.D. at 77–78 (holding that named plaintiff was atypical and rejecting certification of Section 349 claim where plaintiff did not show that class members were exposed to the same advertisement or representation); *Whalen v. Pfizer, Inc.*, No. 600125/05, 2005 WL 2875291, at *3, 2005 N.Y. Misc. Lexis 2429, at *8 (N.Y.Sup.Ct. Sept. 22, 2005) (denying certification of Section 349 claim, reasoning that "class certification is not appropriate where 'questions of whether each individual was exposed to . . . . the advertising would predominate'") (internal citation omitted).

However, courts have certified Section 349 where the claim is based on an omission, rather than an actual misrepresentation. For example, in *In re Coordinated Title Insurance Cases*, No. 010764/2002, 2004 WL 690380, at *8, 2004 N.Y. Misc. Lexis 256, at *10 (N.Y.Sup.Ct. Jan.8, 2004) the court certified a Section 349 class action noting that, in that instance, "the allegations, as framed in the complaint, involve largely *omissions and not affirmative representations*, no individual issues of what the defendants' said will predominate." The court in *In re Coordinated Title Insurance Cases* noted that the plethora of cases cited by defendants in which

Section 349 class actions were denied all turned on affirmative misrepresentations. *Id.* (collecting cases).

 Plaintiff alleges that the Renewal Policy was not contained within the Privileges and Conditions of Membership, nor was it articulated to her by the Costco Customer Services Representative during a March 8, 2006 conversation. Plaintiff therefore asserts that, as a whole, Costco has failed to adequately disclose their backdating policy to its members. In this instance, as in *In re Coordinated Title Insurance Cases,* the allegation is one of omission, not an actual misrepresentation. *See also Weinberg v. Hertz Corp.,* 116 A.D.2d 1, 499 N.Y.S.2d 693, 697 (N.Y.App. Div. 1st Dep't 1986) (rejecting argument that named plaintiff could not show on an individual basis "reliance" as to Section 349 claims and resulting injury and noting "[t]he predominance of questions of fact or law over questions affecting only individual members is the test which must be met, not a nice inspection of the claims of each class member") (citation omitted). Therefore, the common legal and factual issues in the Section 349 claim predominate.[4]

### (2) The Voluntary Payment Doctrine

Defendant also argues that class certification is not appropriate because the "voluntary payment doctrine" would bar recovery for any class member who, after learning of

---

4. Defendant also contends (as highlighted in its supplemental letter to the Court) that "injury in fact" is an indispensable element of a Section 349 claim and putative class members who were able to shop despite their expired status cannot prevail under Section 349. For example, defendant argues that, in the Spring of 2002, Costco had the policy of allowing a shopper with an expired membership to complete one shopping transaction following expiration. *See* Defendant's Opp. Br. at 6–7. However, the Court does not believe this issue precludes class certification. First, as plaintiff points out, the theory of injury and damages is not based upon how many times a person was denied the ability to shop during the expired period, but rather is based on the alleged prospective denial of a full 12–month membership at the time of renewal of their annual membership. In other words, the theory of injury and damages relates to the membership fee itself, rather than denial of shopping on a particular day. Thus, defendant's policy of overlooking expired cards in limited circumstances

does not pose an insurmountable legal barrier to a Section 349 claim. Second, even assuming *arguendo* that damages could be impacted by defendant's policy, it appears that there are large groups of putative class members who are similarly situated and that it is an issue that can be dealt with in a systematic way, rather than requiring mini-trials. *See* Defendant's Opp. Br. at 6 (noting that "at least 30% of lapsed members took advantage of this policy"). Finally, even assuming this policy required some individualized assessment on the issue of damages, the Court does not believe such a task would be so monumental in this case to preclude class certification. *See, e.g., Murry v. Am.'s Mortgage Banc, Inc.,* No. 03 C 5811, 03 C 6186, 2006 WL 1647531, at *5 (N.D.Ill. June 5, 2006) ("[W]here, as here, the reliance determination and calculation of actual damages as to each individual plaintiff do not present a monumental task given the alleged standardized practices of defendants, courts have certified the class as to damages as well as for liability.").

Costco's Renewal Policy, continued to renew late in any subsequent year and, thus, individualized assessment of this issue as to each plaintiff must be made. As set forth below, although defendant contends that the voluntary payment issue precludes a conclusion that questions of law or fact predominate in this case, the Court disagrees.

■ As the Second Circuit held, "[a]lthough a court must examine the relevant facts and both the claims and defenses in determining whether a putative class meets the requirements of Rule 23(b)(3), the fact that a defense may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d at 139 (internal quotations omitted); *accord Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir.2000). "[A]s long as a sufficient constellation of common issues binds class members together, variations in the sources and application of [a defense] will not automatically foreclose class certification under Rule 23(b)(3)." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d at 139; *accord Williams v. Sinclair*, 529 F.2d 1383, 1388 (9th Cir.1975) (stating that the existence of a defense "does not compel a finding that individual issues predominate over common ones" when there is a "sufficient nucleus of common questions").

■ Moreover, although some courts have denied class certification based upon individualized issues created by disputes about the application of the voluntary payment doctrine to particular plaintiffs, the Court does not view this issue as a barrier to class certification under the particular circumstances of this case. It is not the law that any time a voluntary payment doctrine issue is raised that certification must be denied. Such an absolute rule would bar almost all class actions involving alleged nondisclosures (even in standard form contracts) because there is always the possibility that a particular plaintiff, despite a nondisclosure by the defendant, somehow stumbled upon the nondisclosed fact at issue on his or her own and continued to make payments. Instead, the court must examine in each partic-

ular case how the voluntary payment doctrine issue may impact the common issues of law and fact.

■ Here, as discussed *supra*, it appears that defendant may be trying to apply the voluntary payment doctrine broadly to any class member who had multiple renewals after expiration of the membership. Therefore, even if the doctrine applied, no complex, individualized assessment is required as to those members. *See, e.g., Miller v. Optimum Choice, Inc.*, No. DKC 2003–3653, 2006 WL 2130640, at *7 (D.Md. July 28, 2006) ("Because the affirmative defenses are common across the putative class members, the defenses would not operate to destroy the predominance of common questions across the class, but would instead provide an additional link of commonality between the class members.") Moreover, even if some portion of the class may have some non-common factual issues as to their independent knowledge of the Renewal Policy in the context of the voluntary payment doctrine or the issue of damages, such issues are not so complex or overwhelming to defeat the predominance requirement. The Court has at its disposal procedure mechanisms, such as the creation of a subclass, to address such a situation should it arise. As the First Circuit noted, in reversing the district court's decertification of a class of wireless telephone customers of a telecommunications provider where waiver was a potential affirmative defense, the existence of an affirmative defense can often be dealt with in a class action lawsuit:

> [W]here common issues otherwise predominated, courts have usually certified Rule 23(b)(3) classes even though individual issues were present in one or more affirmative defenses. After all, Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class. If, moreover, evidence later shows that an affirmative defense is likely to bar claims against at least some class members, then a court has available adequate procedural mechanisms. For example, it can place class members with potentially barred claims in a separate subclass, or exclude them from the class altogether.

*Smilow v. Southwestern Bell Mobile Sys., Inc.,* 323 F.3d 32, 39–40 (1st Cir.2003) (citations omitted); *see also Aliotta v. Gruenberg,* 237 F.R.D. 4, 12 (D.D.C.2006) ("The individualized nature of the potential damages does not preclude a finding that common questions of law and fact predominate over individualized questions.") (internal quotations and citations omitted). Similarly, in the instant case, the Court concludes that common issues of law and fact predominate on the Section 349 claim, as well as the other claims, despite the existence of a potential defense against some plaintiffs under the voluntary payment doctrine or the potential individualized nature of potential damages.

### (3) Breach of Contract Claims

■■■ Under New York law, the elements of a breach of contract claim are: "(1) a valid contract; (2) plaintiff's performance; (3) defendant's failure to perform; and (4) damages resulting from the breach." *Macaluso v. U.S. Life Ins. Co.,* No. 03 Civ. 2337(GEL), 2004 WL 1497606, at *3 (S.D.N.Y. July 2, 2004) (citing *Furia v. Furia,* 116 A.D.2d 694, 498 N.Y.S.2d 12, 13 (N.Y.App. Div.2d Dep't 1986)).

■■■ All members of the Proposed Class are bound by the same membership agreement and Privileges and Conditions of Membership. (*See* Brosius Tr. 125:19 to 126:21). As the Court discussed *supra,* the alleged breach of standard-form contracts are particularly appropriate for class action. *See Steinberg v. Nationwide Mut. Ins. Co.,* 224 F.R.D. 67, 74 (E.D.N.Y.2004) ("[C]laims arising from interpretations of a form contract appear to present the classic case for treatment as a class, and breach of contract cases

are routinely certified as such.") (citations omitted). Common questions exist as to the meaning of terms contained within the Privileges and Conditions of Membership, and whether Costco breached those terms. These two questions predominate over any individual questions that may present themselves with regard to the breach of contract class claim.

### (4) Unjust Enrichment

■■■ Plaintiff pleads in the alternative that a claim for unjust enrichment exists.[5] In order to state a claim for unjust enrichment, plaintiff must establish "(1) that a benefit was conferred on [Costco], (2) that [Costco] received the benefit without adequately compensating [the individual Costco members], and (3) that circumstances are such that equity requires that [Costco] make restitution." *Sobek v. Quattrochi,* No. 03 Civ. 10219(RWS), 2004 WL 2809989, *9 (S.D.N.Y. Dec.8, 2004). A claim for unjust enrichment is based on " 'an obligation which the law creates, in the absence of any agreement', when and because the acts of the parties or others have placed in the possession of one person money, or its equivalent, under such circumstances that in equity and good conscience he ought not to retain it, and which *ex aequo et bono* belongs to another." *In re Chateaugay Corp.,* 10 F.3d 944, 957–58 (2d Cir.1993) (quoting *Miller v. Schloss,* 218 N.Y. 400, 407, 113 N.E. 337, 339 (1916)).

■■■ Plaintiff alleges that Costco was unjustly enriched at the Class members' expense when members paid renewal membership fees for periods of time that had already elapsed. Defendant makes the same argu-

---

**5.** The Court notes that, as to plaintiff's unjust enrichment claim, it may only be asserted in the absence of an agreement between the parties—be it oral, written or implied-in-fact. *See, e.g., Beth Israel Medical Ctr. v. Horizon Blue Cross and Blue Shield of N.J., Inc.,* 448 F.3d 573, 586 (2d Cir.2006) (citing *Goldman v. Metro. Life Ins. Co.,* 5 N.Y.3d 561, 807 N.Y.S.2d 583, 841 N.E.2d 742 (2005)). Therefore, if this Court were to find, at a later stage of this litigation, that a "valid and enforceable" agreement governed the subject matter at issue in plaintiff's unjust enrichment claim, such claim would be barred, at least to the extent the unjust enrichment claim sought recovery for benefits conferred upon defendant during

the pendency of an agreement between the parties. *Id.* However, the Court declines to consider this issue upon consideration of a Rule 23 class certification motion, wherein its sole concern is whether plaintiff has offered sufficient evidence to establish that the Rule 23 requirements are met, and not to resolve the merits of plaintiff's breach of contract or unjust enrichment claims. *See Nakamura v. Fujii,* 253 A.D.2d 387, 677 N.Y.S.2d 113, 116 (N.Y.App.Div. 1st Dept.1998) ("[W]here, as here, a bona fide dispute exists as to the existence of the contract, the plaintiff may proceed on both breach of contract and quasi-contract theories.").

ments in relation to the unjust enrichment claim as it makes regarding the other claims, namely, that class certification should be precluded because an individualized determination will necessarily be required to determine whether each plaintiff had notice of the Renewal Policy (assuming *arguendo* it is found that the renewal issue is not part of the contractual terms reflected in the Privileges and Conditions of Membership). However, the Court disagrees for the same reasons outlined with respect to the other claims. Specifically, the Court remains unpersuaded that these issues will necessarily require mini-trials as to each plaintiff; rather, to the extent such issues arise, the Court believes that common questions of law and fact will continue to predominate because it does not appear that any such issues would be unique to each plaintiff.

Similarly, to the extent defendant further argues that some members suffered no injury because they were allowed to shop with expired memberships under certain circumstances and therefore cannot recover under a claim of unjust enrichment, the Court's analysis *supra* on that issue in connection with the Section 349 claim applies equally here. In particular, under plaintiffs' theory of the case, any Costco member who received less than 12 months of membership after a renewal would have a claim that they did not receive the full benefit of their bargain, regardless of whether they attempted to shop in a Costco warehouse. In short, as with the other claims, the Court finds that common issues predominate over any individual questions which may present themselves with regard to the unjust enrichment claim.[6]

#### b. Superiority of Class Action

Where common questions of law and fact predominate over individual issues, Rule 23 further requires the Court to determine "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." In determining whether these requirements are met, the Court should consider:

(A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating litigation in a particular forum; and (D) the difficulties likely to be encountered in the management of a class action.

Fed.R. Civ. P. 23(B)(3).

■■■ In the instant case, the Proposed Class consists of thousands of potential class members, most of whom are likely to have suffered a small economic loss if they prevailed on individual claims arising from the dispute that is the subject of this lawsuit. Therefore, " '[f]ew individuals could even contemplate proceeding with this litigation in any context other than through their participation in a class action, given the expense and burden that such litigation would entail[,]' particularly when many of the putative plaintiffs have suffered economic loss of *de minimis value.*" *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 245 F.R.D. 147, 172 (S.D.N.Y.2007) (quoting *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 303 (S.D.N.Y.2003)); *accord In re Vivendi*, 242 F.R.D. at 92; *see also Weinberg v. Hertz Corp.*, 499 N.Y.S.2d at 697 ("[I]t is notable that in determining whether a class action is superior to other viable methods, it is clear that most of the individuals having claims averaging less than $31 would have no realistic day in court if a class action were not available."). Furthermore, a class action will save an enormous amount in litigation costs for all parties and allow them to more efficiently prosecute their claims and defenses. *See id.; see also In re Interpublic Sec. Litig.*, No. 02 Civ. 6527(DLC), 2003 WL 22509414, at *4 (S.D.N.Y. Nov.6, 2003); *In re Deutsche Telekom Ag Sec. Litig.*, 229 F.Supp.2d 277, 282 (S.D.N.Y.2002). Lastly, the Court does not believe that this case poses manageability difficulties that justify denying certification. *See In re Vivendi*, 242 F.R.D. at 107 ("The determination of whether a particular action

---

**6.** The Court, having found that plaintiff satisfies Fed.R.Civ.P. 23(b)(3), finds it unnecessary to analyze whether plaintiff has satisfied the requirements of Fed.R.Civ.P. 23(b)(2).

is manageable is 'peculiarly' within the discretion of the district court.") (citing *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d at 141). Accordingly, a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

### III. CONCLUSION

For the reasons set forth above, plaintiff's motion for class certification is GRANTED. The Court certifies the following Class under Fed.R.Civ.P. 23(b)(3):

> All New York Citizens and residents who, from March 1, 2001 to the present purchased and paid for a new 12–month term of Costco membership (including Gold Star (individual), Business and Executive memberships) subsequent to the expiration of their prior annual memberships, and whose new 12 month membership terms were backdated by Costco to on or about the expiration date of their prior memberships.

> Excluded from the Class are Defendant; any parent, subsidiary, or affiliate of Defendant; any entity in which Defendant has or had a controlling interest, or which Defendant otherwise controls or controlled; and any officer, director, employee, legal representative, predecessor, successor, or assignee of Defendant.

The Court further approves Meiselman, Denlea, Packman, Carton & Eberz P.C. as designated class counsel.

SO ORDERED.