Rhonda **DUPLER,** on Behalf of Herself and All Others Similarly Situated, Plaintiff,

v.

**COSTCO WHOLESALE CORPORATION,** Defendant.

No. 06–CV–3141 (JFB)(ETB).

United States District Court, E.D. New York.

April 15, 2010.

David J. Meiselman, Esq., Jeffrey I. Carton, Esq., Michael A. Berg, Esq., Meiselman, Denlea, Packman, Carton & Eberz, White Plains, NY, for Plaintiff.

James M. Bergin, Esq. and Mark David McPherson, Esq., Morrison & Foerster, New York, NY, for Defendant.

John Jacob Pentz, III, Class Action Fairness Group, Maynard, MA, for Objector Jeffrey Kessinger.

Edward F. Siegel, Beachwood, OH, for Objectors Corinna Connick. Gregory Piccionelli, and Thomas Basie.

## MEMORANDUM AND ORDER

JOSEPH F. BIANCO, District Judge:

Plaintiff Rhonda Dupler (hereinafter "Dupler") on behalf of herself and all others similarly situated (hereinafter "plaintiffs" or the "class") brings this action against Costco Wholesale Corporation (hereinafter "Costco" or "defendant"), alleging that Costco's backdating policy with respect to membership renewals is a deceptive trade practice in violation of New York General Business Law § 349, is a breach of Costco's membership contract, and results in Costco's unjust enrichment.

Plaintiffs now move pursuant to Rule 23 of the Federal Rules of Civil Procedure for the Court to approve a settlement agreement between the parties. Plaintiffs also move for an award of attorneys' fees for class counsel and incentive awards for certain class representatives. For the reasons that follow, the motion is granted in its entirety.

### I. Background and Procedural History

#### A. Facts [1]

This action arises out of a dispute over Costco's membership renewal policy. According to the complaint, Costco customers must be "members" of Costco to shop at Costco stores, and membership periods last one year. (Second Am. Compl. ¶ 1.) Annual membership prices range from $45 for a "Gold Star" individual membership or a "Business" membership to $100 for an "Executive" membership that offers certain rebates not available to other members. (Id. ¶ 11.) Plaintiffs allege that, during the relevant time period, when a customer renewed his membership, Costco would make the renewal effective on the date that the previous year's membership expired. Thus, plaintiffs allege that a member who renewed his membership at some time after the previous year's membership had already expired was deprived of membership benefits for the time between expiration and renewal. (Id. ¶ 14.)

#### B. Procedural History

Plaintiff Dupler, represented by Meiselman, Denlea, Packman, Carton & Weberz, P.C. (hereinafter, "MDPCE" or "class counsel"), commenced this class action in New York Supreme Court, Nassau County, on May 9, 2006. Costco removed the action to this Court, and plaintiff subsequently filed her amended complaint on

1. The factual background underlying this action is set forth in greater detail in the Court's January 31, 2008 Order granting class certification. *Dupler v. Costco Wholesale Corp.,* 249 F.R.D. 29 (E.D.N.Y.2008). Familiarity with that decision is presumed.

November 27, 2006. Defendant filed an Answer to the Amended Complaint on December 14, 2006. On January 31, 2008, this Court granted Dupler's motion for class certification. *Dupler,* 249 F.R.D. 29 (E.D.N.Y.2008). In August 2008, while preparing to serve expert reports and complete discovery, the parties began settlement negotiations. (Affirmation of Jeffrey I. Carton, Oct. 8, 2009 (hereinafter "Carton Aff."), ¶ 8.)

On May 5, 2006, MDPCE filed a parallel class action against Costco in California state court (hereinafter the "California Action") on behalf of named plaintiffs Tempe Evans and Randy Woloshin. (*Id.* ¶ 5.)[2] On June 23, 2006, Costco removed the case to the United States District Court for the Central District of California. That federal court remanded the case back to California state court on August 18, 2006. (*Id.* ¶ 6.) The parties then engaged in discovery, including document requests and interrogatories. (*Id.* ¶ 7.) MDPCE was prepared to conduct additional discovery and move for class certification in the California Action when the settlement negotiations in this action began. (*Id.*)

The parties executed a settlement agreement on March 27, 2009 (hereinafter the "Settlement"). (*Id.* ¶ 8.) Plaintiffs filed a motion for preliminary approval of the Settlement on March 31, 2009. Costco separately filed a joinder in the relief sought. The Court granted preliminary approval of the Settlement during a conference on April 13, 2009 and issued an order to that effect on April 20, 2009. (*See* Court's Order dated April 20, 2009 (hereinafter "Prelim. Approval Order").) In the Preliminary Approval Order, the Court certified a "Settlement Class" defined as:

All persons in the United States who, from March 1, 2001 to March 31, 2009, purchased and paid for a new 12–month term of Costco membership (including Gold Star (individual), Business and Executive memberships) subsequent to the expiration of their prior annual memberships, and whose new 12–month membership terms were deemed to commence on or about the expiration date of their prior memberships.[3]

(Prelim. Approval Order ¶ 1.) The Court confirmed the appointment of Dupler as class representative and the appointment of MDPCE as class counsel. (*Id.* ¶ 2.) The Court found that: "the proposed Settlement, as set forth in the Parties' Stipulation, appears to be fair, reasonable, adequate, and in the best interests of the Class, and therefore grants Plaintiff's consented-to motion for preliminary approval of the proposed Settlement." (*Id.* ¶ 3.) The Court also approved the proposed class notice and proposed manner of delivering that notice to the class. (*Id.* ¶ 4.)

Notice of the Settlement was sent to the class by regular mail and by e-mail. (Carton Aff. ¶ 22.) Of the 11,800,514 class members, 127 opted out of the Settlement and 24 objected to the Settlement. (*Id.* ¶ 25.) Of the objecting class members, four are represented by counsel. (*Id.* ¶ 63.) John Jacob Pentz, III represents objector Jeffrey Kessinger (hereinafter the "Pentz objector") and Edward F. Siegel represents objectors Corinna Connick, Gregory Piccionelli, and Thomas Basie (hereinafter the "Siegel objectors").

The Court held a fairness hearing regarding the Settlement on October 16, 2009. Counsel for plaintiffs and defendant

---

2. MDPCE prosecuted the California Action with Caldwell Leslie & Proctor, PC, which does not seek an award of attorneys' fees as part of the settlement in this action. (Carton Aff. ¶ 6 n. 1.)

3. The defined class excluded Costco, any Costco-related entity, and any officer, director, employee, legal representative, predecessor, successor, or assignee of Costco. (Prelim. Approval Order ¶ 1.)

were present, as was counsel for the Siegel objectors. Subsequent to the hearing, MDPCE provided, upon request by the Siegel objectors and the Court, additional details regarding MDPCE's requested attorneys' fees.

By letter dated December 9, 2009, counsel for defendant informed the Court that, due to computer error, approximately 58,-000 class members had not been sent short form notices of the Settlement. Class counsel also submitted a letter to the Court regarding this issue on December 10, 2009. The Court held a telephone conference on January 12, 2010 and set a schedule for supplemental notice to the affected class members and scheduled a supplemental fairness hearing on March 29, 2010. By Order dated January 15, 2010, the Court approved the parties' proposed "short form notice" and "supplemental class action settlement notice." On February 10, 2010, defendant submitted an affidavit from a Costco employee detailing the notice provided to the affected class members. (*See* Csonaki Decl., Feb. 10, 2010.) The Court held a supplemental fairness hearing on March 29, 2010. No objectors appeared. This matter is fully submitted.[4]

### C. Terms of the Settlement

Under the Settlement, the parties have agreed that Costco will, *inter alia,* provide additional membership terms to certain class members. Specifically, class members whose post-expiration renewal date was 22 days or more (but less than two months) after their immediately preceding membership expiration date will receive one additional month of Costco membership without charge. (Carton Aff., Ex. A (hereinafter "Settlement"), at 9.) Class members whose post-expiration renewal date was two months or more (but less

than three months) after their immediately preceding membership expiration date will receive two additional months of Costco membership without charge. (*Id.*) Class members whose post-expiration renewal date was three months or more after their immediately preceding membership expiration date will receive three additional months of Costco membership without charge. (*Id.*) Class members whose post-expiration renewal date was 21 days or less after their immediately preceding membership expiration date will receive no additional membership term under the Settlement. (Carton Aff. ¶ 13.) Each eligible class member will receive only one extension of Costco membership based on the first post-expiration renewal, even if Costco applied its renewal policy to the customer on more than one occasion. (Settlement, at 9–10.) Class members who are currently Costco customers will receive automatic renewals of their membership for the above-discussed periods of time. (*Id.* at 10.) Class members who are no longer Costco customers will receive temporary membership privileges for the above-discussed periods of time. (*Id.* at 10.)

Costco has also agreed to adjust the application of its renewal policy. Specifically, Costco has agreed to apply the renewal policy only to memberships renewed within 60 days of the previous year's membership expiration date. Costco has agreed that memberships renewed more than 60 days after the most recent expiration date will commence on the date of payment of the renewal fee. (*Id.* at 10.) Costco has also agreed to provide additional disclosure of its renewal policy for a period of at least four years after the date of the Settlement. (*Id.* at 10–11.)

---

4. Although some class members submitted objections to the Court after the deadline to do so had passed, the Court has nevertheless fully considered all of the submissions in this action.

Finally, Costco has agreed not to oppose class counsel's request for an award of attorneys' fees in an amount not to exceed $5,380,000, which would be paid by Costco apart from the benefits provided to the class under the Settlement. (*Id.* at 17.) Costco has also agreed not to oppose class counsel's motion requesting "enhancement awards" for class representative Dupler in an amount not to exceed $25,000 and for California plaintiff Tempe Evans (hereinafter "Evans") in an amount not to exceed $5,000; the awards similarly would be paid by Costco apart from the benefits provided to the class. (*Id.* at 11.)

## II. DISCUSSION

For the reasons set forth below, the Court grants plaintiffs' motion for final approval of the Settlement and for plaintiffs' requested attorneys' fees and enhancement awards.[5]

### A. Fairness of the Settlement

#### 1. Legal Standard

 Under Rule 23(e) of the Federal Rules of Civil Procedure, a court may approve a class action settlement only after holding a hearing and finding that the settlement is "fair, reasonable, and adequate." Fed.R.Civ.P. 23(e)(2). "The District Court determines a settlement's fairness by examining the negotiating process leading up to the settlement as well as the settlement's substantive terms." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir.2001). Accordingly, the Court must consider both the procedural fairness of the settlement negotiations, as well as the substantive fairness of the settlement itself. "With respect to procedural fairness, we have stated that a District Court reviewing a proposed settlement 'must pay close attention to the negotiating process,

to ensure that the settlement resulted from arm's length negotiations and that plaintiffs' counsel ... possessed the [necessary] experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests.'" *McReynolds v. Richards–Cantave*, 588 F.3d 790, 804 (2d Cir.2009). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Wal–Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir.2005). In addition, there is a "strong judicial policy in favor of settlements, particularly in the class action context." *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir.1998).

 The Court examines the substantive fairness of the Settlement according to the *"Grinnell* factors." *See Wal–Mart Stores*, 396 F.3d at 117. The *Grinnell* factors are: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir.1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir.2000). In making a fairness determination, the Court "must

---

**5.** The Court also confirms again the adequacy of Dupler as class representative and MDPCE as class counsel.

eschew any rubber stamp approval in favor of an independent evaluation, yet, at the same time, it must stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *Grinnell,* 495 F.2d at 462; *see also McReynolds,* 588 F.3d at 804 ("The District Court expressly considered the *Grinnell* factors in this case, and we discern no error in the District Court's determination that 'not a single *Grinnell* factor . . . weighs against approving the Settlement.' ").

### 2. Application

#### a. Procedural Fairness of Settlement

■ The Settlement in this case was reached after arm's length negotiations by counsel for plaintiffs and defendant. Plaintiffs' counsel, MDPCE, has considerable experience in complex litigation and consumer class actions. (Carton Aff. ¶ 27.) The Settlement was not reached until after fact discovery was complete and after the class was certified. (Carton Aff. ¶ 32.) The negotiations lasted six months (Carton Aff. ¶ 31), and once an agreement in principle was reached, several drafts were exchanged as the precise wording of the Settlement was negotiated (Carton Aff. ¶ 32). The Court therefore concludes that the Settlement is procedurally fair, and is entitled to a presumption of being fair, reasonable, and adequate. *See Wal–Mart Stores,* 396 F.3d at 116.

#### b. Substantive Fairness of Settlement

■ The Court has carefully considered the Settlement's substantive terms in light of the *Grinnell* factors. As discussed below, the Court concludes that the Settlement is substantively fair, reasonable, and adequate.

#### i. Complexity, Expense, and Likely Duration of the Litigation

If litigation of this action continued, the parties would have to undergo the time and expense of expert discovery, a likely motion for summary judgment by defendant (*see* Carton Aff. ¶ 40), and, if necessary, a trial. Further litigation would also require resolution of several complex issues, including: the effectiveness of Costco's disclosure of its renewal policy to customers; whether class members are entitled to damages; whether the voluntary payment doctrine precludes multiple recoveries on the part of each class member; and whether the class members' damages should be offset by the value of the free membership period (up to 30 days) that they received when they first joined Costco. The parties would develop and present expert evidence to address some of these damages issues. (Pls.' Br., at 20–21.) The Court therefore finds that the complexity, expense, and likely duration of the litigation weigh in favor of Settlement approval.

#### ii. Reaction of the Class to the Settlement

Of the 11,800,514 class members, only 127 opted out and 24 objected. Such a small number of class members seeking exclusion or objecting indicates an overwhelmingly positive reaction of the class. *See, e.g., Wal–Mart Stores,* 396 F.3d at 118 (finding that the fact that only 18 out of 5 million class members objected was evidence that the class was "overwhelmingly in favor" of the settlement); *In re Telik, Inc., Sec. Litig.,* 576 F.Supp.2d 570, 593 (S.D.N.Y.2008) (finding "overwhelmingly positive reaction of the Class" where, out of 54,000 class members, three opted out of the settlement and one objected to it); *see also In re Visa Check/Mastermoney Antitrust Litig.,* 297 F.Supp.2d 503, 511 (E.D.N.Y.2003) ("[A] certain number of ob-

**240**

jections are to be expected in a class action with an extensive notice campaign and a potentially large number of class members. If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." (citation omitted)). Given the relatively small number of class members who opted out or objected to the Settlement, the Court finds that the reaction of the class has been overwhelmingly positive, which strongly weighs in favor of Settlement approval. *See, e.g., Maley v. Del Global Techs. Corp.,* 186 F.Supp.2d 358, 362 (S.D.N.Y.2002) ("It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." (citation omitted)).

### iii. Stage of the Proceedings and Amount of Discovery Completed

■ "This factor relates to whether the plaintiffs had sufficient information on the merits of the case to enter into a settlement...." *Parker v. Time Warner Entm't Co.,* 631 F.Supp.2d 242, 259 (E.D.N.Y. 2009). In this action, the parties did not begin settlement negotiations until after the class had been certified and after fact discovery was nearly completed. (Carton Aff. ¶ 32.)[6] The Court therefore finds that plaintiffs had sufficient information to enter the Settlement, and this factor weighs in favor of Settlement approval.

### iv. Risks of Establishing Liability

As the Court noted in certifying the class, the "core of this lawsuit is whether Costco's Renewal Policy is adequately disclosed to Costco members...." *Dupler,* 249 F.R.D. at 37. Therefore, if the case proceeded to summary judgment or trial, plaintiffs would have to overcome the fact

that Costco disclosed to customers: "We will automatically extend your membership for an additional 12 months from your expiration date upon receiving your renewal fees." (Pls.' Br. at 27.) Costco would likely argue that this disclosure put customers on notice that all renewals, including post-expiration renewals, are measured from the expiration date. Because resolution of this issue in plaintiffs' favor is by no means a foregone conclusion, plaintiffs face a substantial risk of establishing liability, which weighs in favor of Settlement approval.

### v. Risks of Establishing Damages

The risks of establishing damages also weigh in favor of Settlement approval. If litigation continued, Costco would likely argue that plaintiffs are not entitled to any damages, or at least that any damages should be limited. For instance, as the Court noted in certifying the class, the voluntary payment doctrine "would bar recovery by any Costco customer who renewed their expired membership knowing that Costco would backdate their membership." *Dupler,* 249 F.R.D. at 38. Establishing damages for class members who renewed their Costco membership multiple times, therefore, could prove difficult. In addition, Costco would likely argue that any damages should be offset by the 30 days of free membership that all Costco members receive. (Carton Aff. ¶ 13.)

### vi. Risks of Maintaining Class Action Through Trial

If not for the Settlement, the parties would likely have to litigate a motion for summary judgment before proceeding to trial, if at all, which weighs in favor of Settlement approval. *See, e.g., In re Currency Conversion Fee Antitrust Litig.,* 263

---

**6.** Although settlement agreements reached before class certification are subject to additional scrutiny, *see D'Amato,* 236 F.3d at 85, no such additional scrutiny is required here as the Settlement was reached after class certification.

F.R.D. 110, 124 (S.D.N.Y.2009). In addition, before the parties agreed to the nationwide Settlement, this Court had certified only a class of New York customers. *Dupler*, 249 F.R.D. at 48. The nationwide class that would receive benefits under the Settlement has been certified only as a "Settlement Class." (Prelim. Approval Order ¶ 1.) It is unlikely that such a nationwide class could proceed to trial, at least with respect to the claims arising under New York General Business Law § 349. *See Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 746 N.Y.S.2d 858, 774 N.E.2d 1190, 1195 (2002) ("[T]he transaction in which the consumer is deceived must occur in New York." (interpreting N.Y. Gen. Bus. Law § 349)); *Berkman v. Robert's Am. Gourmet Food, Inc.*, No. 107441/02, 2007 WL 1815990, at *5 (N.Y.Sup.Ct. June 26, 2007) (holding that the territorial limitation on N.Y. Gen. Bus. Law § 349 precluded nationwide class certification). Thus, the risk of maintaining a nationwide class through trial also weighs in favor of Settlement approval.

### vii. Ability of Defendants to Withstand a Greater Judgment

Plaintiffs concede that Costco likely could withstand a greater judgment (Pls.' Br. at 30), which weighs against approval of the Settlement. Given the circumstances of the case, however, and the fact that all of the other *Grinnell* factors weigh in favor of the Settlement, "this factor alone does not suggest the settlement is unfair." *D'Amato*, 236 F.3d at 86.

### viii. Range of Reasonableness of Settlement Fund in Light of Best Possible Recovery

The Court finds that the Settlement is reasonable in light of the best possible recovery. Under the Settlement, 4.8 million class members will receive a direct economic benefit of additional membership terms at Costco, valued at about $38.8 million. (Carton Aff. ¶ 15.)[7] Although the Settlement does not provide any direct economic benefit to class members whose post-expiration renewal date was three weeks or less after expiration, the Court finds that any loss of membership privileges for these customers was *de minimis*, as Costco routinely provided up to 30 days of free membership. (*Id.* ¶ 13.) Although the Settlement conceivably could have included additional terms to benefit the class, such as allowing class members to recover for multiple post-expiration renewals, the Court finds that the direct economic benefit provided under the Settlement is nevertheless reasonable.

The Settlement also includes other benefits to the class. Costco has agreed to change its renewal policy so as not to backdate the renewals of members who renewed 60 days or more after expiration, a change that class counsel estimates will save Costco customers a total of $87.2 million over the next seven years. (*Id.* ¶¶ 16–18.) Costco has also agreed to provide additional disclosure of its renewal policy. (*Id.* ¶ 19.) These terms also weigh in favor of Settlement approval. *See, e.g., In re Currency*, 263 F.R.D. at 124 ("The Settlement includes improved disclosure obligations.... Thus, these factors weigh strongly in favor of approval.").

### ix. Range of Reasonableness of Settlement Fund to a Possible Recovery in Light of All Attendant Risks of Litigation

The Court concludes that the Settlement is especially reasonable for the class in light of the above-discussed risks of continued litigation. For instance, the class would face the risk of recovering substan-

---

**7.** The calculations supporting this figure were set forth by plaintiffs at the preliminary approval stage. (*See* Pls.' Preliminary Approval Br., at 11–16.)

242

tially less than the Settlement provides or nothing at all if a jury found that Costco's disclosure of its renewal policy barred recovery.

In sum, after careful consideration of the Settlement in light of the *Grinnell* factors, the Court concludes that the Settlement is both procedurally and substantively fair, reasonable, and adequate under Rule 23. Accordingly, plaintiffs' motion for final approval of the Settlement is granted.

## B. Attorneys' Fees

For the reasons set forth below, plaintiffs' motion for an award of attorneys' fees is granted.

### 1. Legal Standard

██ Although litigants are normally expected to pay their own expenses, "[t]here is a salient exception to this general rule that applies where an attorney succeeds in creating a common fund from which members of a class are compensated for a common injury inflicted on the class." *Goldberger v. Integrated Res., Inc.,* 209 F.3d 43, 47 (2d Cir.2000) (citation omitted). Thus, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed.R.Civ.P. 23(h). When attorneys take their compensation from the common fund, courts are to set a reasonable fee. *Goldberger,* 209 F.3d at 47. In such a situation,

a court can apply two methods to assess the reasonableness of the requested fee: the percentage method or the lodestar method. *See McDaniel v. County of Schenectady,* 595 F.3d 411, 417–422 (2d Cir. 2010); *Rein v. Socialist People's Libyan Arab Jamahiriya,* 568 F.3d 345, 354–55 (2d Cir.2009) (citing *Goldberger,* 209 F.3d at 47). Under the percentage method, the district court simply sets some percentage of the total class recovery as a fee. *Goldberger,* 209 F.3d at 47. Under the lodestar method, the court scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate. *Id.* Once that initial computation, or "lodestar," has been determined, the district court may, in its discretion, increase the lodestar by applying a "multiplier." *Id.*[8]

"The trend in this Circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal–Mart Stores,* 396 F.3d at 121. The lodestar method "creates an unanticipated disincentive to early settlements, tempts lawyers to run up their hours, and compels district courts to engage in a gimlet-eyed review of line item fee audits." *Id.* (internal quotation and brackets omitted). As long as the objective of preventing unwarranted windfalls

8. In the context of statutory fee-shifting, the Second Circuit has recently "abandon[ed] the 'lodestar' approach to awarding attorney's fees, and adopted instead a 'presumptively reasonable fee' calculation...." *See Simmons v. N.Y.C. Trans. Auth.,* 575 F.3d 170, 172 (2d Cir.2009) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,* 493 F.3d 110, 117–18 (2d Cir.2007), *amended on other grounds by* 522 F.3d 182 (2d Cir. 2008)). Under the "presumptively reasonable fee" approach, the district court should assess case-specific considerations at the outset and factor them into a determination of the rea-

sonable hourly rate. This rate is then multiplied by the number of hours worked to generate a "presumptively reasonable fee." *See McDaniel,* 595 F.3d at 420. However, "[f]rom a mathematical perspective, of course, it makes little difference whether a court, following *Arbor Hill,* considers case-specific factors to estimate a reasonable rate for an attorney's services, which is then multiplied by the number of hours worked, or whether the court takes the traditional approach and considers these same factors in calculating a multiplier to the lodestar." *Id.* at 422.

to attorneys is achieved, there is "no need to compel district courts to undertake the cumbersome, enervating, and often surrealistic process of lodestar computation." *Goldberger*, 209 F.3d at 49–50 (internal quotation omitted). Nevertheless, district courts are encouraged to require "documentation of hours as a 'crosscheck' on the reasonableness of the requested percentage. Of course, where used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized." *Id.* at 50 (citation omitted).

■ "Whatever method is used, the reasonableness of a common fund fee award is governed by the so-called *Goldberger* factors: (1) counsel's time and labor; (2) the litigation's complexities and magnitude; (3) the litigation risks; (4) quality of representation; (5) the relationship of the requested fee to the settlement; and (6) considerations of public policy." *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 (2d Cir.2007) (citation omitted).

■ In a case where the attorneys' fees are to be paid directly by defendant and, thus, "money paid to the attorneys is entirely independent of money awarded to the class, the Court's fiduciary role in overseeing the award is greatly reduced, because there is no conflict of interest between attorneys and class members." *McBean v. City of N.Y.*, 233 F.R.D. 377, 392 (S.D.N.Y.2006).

## 2. Application

As a threshold matter, the Court notes that the requested attorneys' fees in this case will not be drawn from a common fund, but rather will be paid directly by defendant. Whatever attorneys' fees are awarded, therefore, will in no way diminish the benefit to the class under the Settlement, which the Court has already found fair, reasonable, and adequate. Furthermore, the issue of attorneys' fees was not raised during the Settlement negotiations until after the parties had already agreed upon the benefit to the class. (*See* Carton Aff. ¶ 33.) Therefore, the Court's "fiduciary role in overseeing the award is greatly reduced." *McBean*, 233 F.R.D. at 392. In any event, even if the fees somehow affected the benefit to the class, the Court finds that the requested attorneys' fees are reasonable under both the percentage and lodestar methods for the reasons set forth below.

### a. Percentage method

■ The requested fee award of $5,380,000 represents at most 14% of the $38.8 million direct economic benefit to the class.[9] Under *Goldberger*, the Court must consider, *inter alia*, the relationship of the requested fee to the Settlement. In common fund cases, fee awards as high as 25% are "well within the range of fees approved by courts in this Circuit and elsewhere." *In re Telik, Inc., Sec. Litig.*, 576 F.Supp.2d 570, 587 (S.D.N.Y.2008) (collecting cases). The Court also notes that however large the requested fee, it is not drawn from a common fund but rather is to be paid directly by defendant. *See, e.g., Steinberg v. Nationwide Mut. Ins. Co.*, 612 F.Supp.2d 219, 224 (E.D.N.Y.2009) ("[T]he Court notes with approval that the fee award will not be drawn from the common fund but will be paid directly by [defendant]. In this regard, the fee award, how-

---

9. Class counsel argues that the requested fees actually represent only 4.3% of the total economic benefit to the class because the class not only receives the $38.8 million worth of additional membership terms, but also an expected savings of $87.2 million over the next seven years because of changes to Costco's renewal policy. (Carton Aff. ¶¶ 16–18.) Because the Court concludes that class counsel's requested fee award is reasonable even taking a more conservative view of the benefit to the class, the Court need not consider this additional argument.

ever substantial, will have no effect on the monetary relief afforded to class members."); *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173(RPP), 2008 WL 1956267, at *15 (S.D.N.Y. May 1, 2008) ("[R]egardless of the size of the fee award, class members who apply for recovery under the terms of the Settlement will receive the same benefit; the fee award does not reduce the recovery to the class."); *McBean*, 233 F.R.D. at 393 ("[W]hile this is not a common fund case, the fact that the award here is lower than many awards actually taken from a common fund, at the expense of absent class members, is further evidence of its reasonableness.") (approving attorneys' fees equal to 18% of the amount received by the class). Therefore, the fact that the requested fee is comparable to fees that courts have found reasonable even when taken out of a common fund weighs in favor of the fee's reasonableness. Furthermore, the fact that the parties did not negotiate the issue of attorneys' fees until after deciding on the benefit to the class (*see* Carton Aff. ¶ 33) weighs in favor of the reasonableness of the fees. *See, e.g., In re Sony SXRD*, 2008 WL 1956267, at *15 ("[T]he fee was negotiated only after agreement had been reached on the substantive terms of the Settlement benefitting the class. This tends to eliminate any danger of the amount of attorneys' fees affecting the amount of the class recovery.").

The other *Goldberger* factors—counsel's time and labor, the litigation's complexities and magnitude, the litigation's risks, the quality of the representation, and considerations of public policy—all weigh in favor of approving the requested fee award. Class counsel spent over 3,500 hours during a three and one-half year period prosecuting this action. (Carton Aff., Ex. E.) MDPCE conducted discovery, brought a parallel action in California, and successfully moved for class certification. As discussed above, this litigation is complex and has entailed substantial risk for MDPCE. The Court finds that MDPCE's representation has been of high quality. The Court also finds that the proposed fee award properly balances the policy goal of encouraging counsel to pursue meritorious actions while protecting against excessive fees. *See In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 132 (2d Cir.2008). Therefore, the Court finds that the requested fee award is reasonable.

b. Lodestar method

■ The Court also finds that the requested fee is reasonable under the lodestar method. MDPCE reasonably billed 3,521 hours at rates ranging from $125 for a paralegal to $475 for a partner and of counsel, yielding a lodestar of $1,632,067.37. (Carton Aff., Ex. E; Affirmation of Jeffrey I. Carton, Oct. 19, 2009 (hereinafter "Supplemental Carton Affidavit"), ¶ 2.) The Court finds that the requested hourly rates in this complex class action are reasonable, particularly in light of the fact that the fees have been agreed to by defendant and will not be drawn from a common fund.[10] The Court has

---

10. The Second Circuit has held, in the context of statutory fee-shifting, that in awarding attorneys' fees a district court must presumptively apply the prevailing rate within the district unless the party seeking fees "persuasively establish[es] that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." *Simmons v. N.Y. City Transit Auth.*, 575 F.3d 170, 172 (2d Cir.2009). In recent cases, courts have found that the prevailing rates for partners in Eastern District of New York cases range from about $300–400 per hour. *See, e.g., Luca v. County of Nassau*, 698 F.Supp.2d 296, 301–03, No. 04–CV–4898(FB), 2010 WL 307027, at *3–4 (E.D.N.Y. Jan. 25, 2010) (finding that $400 an hour was reasonable rate for experienced attorney's services in the Eastern District); *Gutman v. Klein*, No.

also reviewed the billing records submitted by class counsel and finds that the time entries are reasonably detailed and the hours expended were reasonable and of benefit to the class.[11] *See, e.g., In re Prudential Sec. Inc. Ltd. Partnerships Litig.,* 985 F.Supp. 410, 416–17 (S.D.N.Y.1997) ("This Court is satisfied, based on the submissions and the Court's direct observations, that the reported hours were appropriately expended for the benefit of the Class and that the hourly rates claimed fairly approximate the hourly rates of compensation attorneys of like skill in this area would charge for similar services."). Class counsel also reasonably spent $45,832.58 in costs. *See, e.g., In re Currency,* 263 F.R.D. at 131 ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients." (quotation omitted)).

■ The requested fee award of $5,380,000 would require a lodestar multiplier of about 3.3. As discussed above, the Court has considered class counsel's fee request under the *Goldberger* factors and concludes, particularly in light of the fact that class counsel's fee does not come out of a common fund, that multiplying class counsel's lodestar by 3.3 is reasonable in this case. *See, e.g., Wal–Mart Stores,* 396 F.3d at 123 (affirming 3.5 multiplier); *In re Telik,* 576 F.Supp.2d at 590 ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts, including this Court.").

## C. Enhancement Awards

■ The Settlement also provides enhancement, or incentive, awards to Dupler and Evans. Specifically, Dupler will receive $25,000 and Evans will receive $5,000. "The amount of the incentive award is related to the personal risk incurred by the individual or any additional effort expended by the individual for the benefit of the lawsuit." *Parker v. Time Warner Entm't Co.,* 631 F.Supp.2d 242, 279 (E.D.N.Y.2009) (citation omitted). Dupler discussed with class counsel the pleadings, discovery demands, discovery responses, and memoranda of law on class certification. She was prepared for her deposition by MDPCE, was deposed, and she corrected her deposition transcript. She conferred with class counsel during the settlement negotiations. (Carton Aff. ¶ 52.) Evans reviewed the complaint in the California Action and discussed the facts with counsel. (*Id.* ¶ 55.)

The Court finds that the incentive awards, therefore, are reasonably based on the participation of Dupler and Evans in the action to date. *See, e.g., In re Currency,* 263 F.R.D. at 131 (finding that incentive awards of $45,000, $35,000, and lesser

03 Civ. 1570(BMC), 2009 WL 3296072, at *2 (E.D.N.Y. Oct. 13, 2009) (finding that hourly rates of $300–400 for partners, $200–300 for senior associates, and $100–200 for junior associates were reasonable in the Eastern District). As discussed above, the Court finds that, in this complex class action, the requested fees are reasonable, particularly in light of the fact that the fees are not to be awarded from a common fund and defendant does not object. Even assuming *arguendo* that the Court determined that the requested hourly rate should be reduced, *e.g.*, to $400 per hour for partners, the Court concludes that the requested fee of $5,380,000, and the lodestar

multiplier needed to reach that amount, would nevertheless be reasonable in this case given the Court's above-discussed analysis of the *Goldberger* factors, as well as the fact that the amount has been agreed to by defendant and does not affect the recovery of the class.

11. The Court notes that although the Siegel objectors took issue with the lodestar multiplier requested by class counsel, they conceded that MDPCE's records (*see* Supp. Carton Aff., Ex. A) "appear to support" MDPCE's assertion that it spent over 3,500 hours of time prosecuting this action. (Notice of Supplemental Objections, filed Nov. 12, 2009 (hereinafter, "Final Siegel Objections").)

amounts were "within the range of what other courts have found to be reasonable, although on the higher end"); *Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 124–25 (S.D.N.Y.2001) (approving incentive awards of $10,000 and $1,500 for certain class members where those awards were to be drawn from a common fund). The Court notes with approval that Costco has agreed to pay these incentive awards directly, and therefore the awards will not diminish the recovery of any other class members. (Carton Aff. ¶ 51.) In addition, the parties did not negotiate the incentive awards until after deciding the benefit to the class under the Settlement (Carton Aff. ¶ 33), which the Court has already found fair, reasonable, and adequate. The Court therefore finds that the incentive awards of $25,000 to Dupler and $5,000 to Evans are reasonable, especially in light of the fact that they do not come out of a common fund. *See, e.g., McBean*, 233 F.R.D. at 391 (approving incentive awards ranging from $25,000 to $30,000 as "fall[ing] solidly in the middle of the range" of those approved "across a variety of class actions").

### D. Objections

The Court has considered all of the objections submitted by the 24 objecting class members and finds them to be without merit.

Several class members object to the benefits provided by the Settlement. For instance, they argue that the Settlement is unfair because it does not provide additional compensation to class members who renewed their Costco membership more than once.[12] As discussed above, however, the voluntary payment doctrine "would bar recovery by any Costco customer who renewed their expired membership knowing that Costco would backdate their membership," *Dupler*, 249 F.R.D. at 38, and Costco, therefore, has at least "a potential defense against some plaintiffs under the voluntary payment doctrine." *Id.* at 46.[13] In any event, even assuming plaintiffs could recover damages for multiple post-expiration renewals, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Maley v. Del Global Techs. Corp.*, 186 F.Supp.2d 358, 366 (S.D.N.Y.2002) (quoting *Grinnell*, 495 F.2d at 455). Indeed, a "settlement agreement achieved through good-faith, non-collusive negotiation does not have to be perfect, just reasonable, adequate and fair."

---

12. The Siegel objectors also request discovery "concerning the methodology employed to determine the amount of benefits flowing to the class." (Objections, filed Oct. 14, 2009 (hereinafter "Siegel Objections"), at 5.) As discussed above, the methodology employed to determine the $38.8 million direct economic benefit to the class is set forth in Plaintiffs' Preliminary Approval Brief. The Court therefore sees no need for additional discovery in this action. *See Wal–Mart Stores*, 396 F.3d at 120 ("Generally, such a discovery request depends on 'whether or not the District Court had before it sufficient facts intelligently to approve the settlement offer. If it did, then there is no reason ... to give [objectors] authority to renew discovery.' " (quoting *Grinnell*, 495 F.2d at 462–63)).

13. The Pentz objector argues that the voluntary payment doctrine is inapplicable in an evaluation of this Settlement under *Synfuel Techs., Inc. v. DHL Express*, 463 F.3d 646, 654 (7th Cir.2006). That case is inapposite, however, as the Seventh Circuit requires district courts to weigh the settlement amount against the expected value of fully litigating the matter. *See, e.g., id.* at 653 (noting that when reviewing a proposed settlement, district courts must "begin by quantify[ing] the net expected value of continued litigation to the class" (quotation omitted)). The Second Circuit, on the other hand, requires that district courts assess the fairness of the settlement in light of the *Grinnell* factors, which the Court has done here.

*Joel A. v. Giuliani,* 218 F.3d 132, 144 (2d Cir.2000). As the Court has already found that the Settlement is fair, reasonable, and adequate, these and all other objections to the benefits provided under the Settlement [14] are without merit.[15]

Some objectors argue that Dupler is an inadequate class representative on several grounds. First, they argue that Dupler only renewed her Costco membership once and therefore fails to represent a purported subclass of plaintiffs whose Costco memberships were backdated more than once. As the Court noted in certifying the class, however, Dupler did in fact renew her membership on more than one occasion. *Dupler,* 249 F.R.D. at 35 n. 2. Second, the Pentz objector argues that Dupler has a financial conflict with the class because her brother, Lindsay M. Held, an attorney formerly employed at MDPCE, "will receive substantial fees as a result of this settlement, and his sister may be expected to share in those fees, if only indirectly." (Objection to Proposed Settlement and Request for Attorney's Fees and Notice of Intention to Appear, filed Aug. 10, 2009 (hereinafter, "Pentz Objections"), at 2.) The record is clear, however, that

Dupler's brother left MDPCE in March 2007, and since that time he has had "no affiliation with MDPCE or involvement in any of MDPCE's cases." (Affirmation of Lindsay M. Held, Oct. 18, 2007, ¶ 3.) Mr. Held further states that he has "absolutely no financial or tangible interest in the outcome of this action" and has "entered into no arrangement to receive any compensation from MDPCE" in connection with this action or the California Action. (*Id.* ¶¶ 4–5.) Any potential conflict, therefore, is "too attenuated and speculative to preclude Ms. Dupler from being a class representative." *Dupler,* 249 F.R.D. at 42.[16] Finally, the Pentz objector argues that the incentive award to Dupler renders her an inadequate class representative. For the reasons discussed above, the Court finds the incentive award to be reasonable, and the Court sees no reason to believe that the award creates a conflict with the class. *See McBean,* 233 F.R.D. at 391 ("[B]y negotiating the general terms of the settlement before negotiating the awards to the named plaintiffs, the incentives of the named plaintiffs were never counter to those of the class as a whole.").[17] Therefore, all of the objections to Dupler's ade-

14. One class member also objects to the Settlement on the ground that she lives too far away from the nearest Costco to take advantage of the additional membership terms, and would therefore prefer a cash award. While additional Costco membership may be inconvenient for this one class member, a settlement agreement "does not have to be perfect, just reasonable, adequate and fair." *Joel A.,* 218 F.3d at 144; *see also In re PaineWebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 131 (S.D.N.Y.1997) ("[T]he applicable standard for approval is whether the settlement is fair, reasonable and adequate, not whether it is perfect, or whether every Class Member receives an identical recovery.").

15. Some class members object that the Settlement should do more to penalize Costco for its practices. Punitive damages are generally not available in breach of contract actions,

however, *see Rocanova v. Equitable Life Assurance Soc'y of U.S.,* 83 N.Y.2d 603, 612 N.Y.S.2d 339, 634 N.E.2d 940, 943 (1994), and so the fact that the Settlement does not include any such provision does not make it unreasonable.

16. Although the Pentz objector acknowledges that the Court has already found this alleged conflict of interest "attenuated and speculative," he argues that this is no longer the case because the suit has now settled along with the California Action, with which Mr. Held was involved. (Pentz Objections at 2.) As discussed above, however, Dupler's brother will receive no compensation under the Settlement.

17. The objections of other individual class members to the incentive awards are without merit for the same reasons.

quacy as a class representative or to the incentive awards are without merit.

Several objectors argue that the requested attorneys' fee award is excessive.[18] As discussed above, the Court finds the requested fee to be reasonable.[19]

 Some class members object that they did not receive timely or adequate notice of the Settlement. As counsel for defendant conceded at the October 16, 2009 fairness hearing, notice was sent late to a small percentage of class members. Class counsel states that it has provided the full class notice and stipulation of settlement to any class member who requested them, regardless of whether the request came after the deadline.[20] (Carton Aff. ¶ 96.) Furthermore, counsel for both parties urged the Court at the October 16 hearing to consider valid any opt-out by any class member who attempted to do so after the deadline had passed, which the Court agrees to do. (See also Decl. of James M. Bergin Regarding Persons Who Requested Exclusion From Class Action Settlement, Oct. 1, 2009, ¶ 5.) In any event, it is settled law that "for due process to be satisfied, not every class member need receive actual notice [of the class settlement], as long as class counsel 'acted reasonably in selecting means likely to inform persons affected.'" In re Adelphia Commc'ns Corp. Sec. Litig., 271 Fed.Appx. 41, 44 (2d Cir.2008) (quoting Weigner v. New York, 852 F.2d 646, 649 (2d Cir.1988)) (holding that actual notice was not necessary because notice of the settlement was reasonably provided to the class, including publication in newspapers and entry on the district court's docket); see also, e.g., Turner v. Murphy Oil USA, Inc., 472 F.Supp.2d 830, 840 (E.D.La.2007) ("[T]he question is not whether some individual got adequate notice, but whether the class as a whole had notice adequate to flush out whatever objections might reasonably be raised to the settlement." (quoting Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1375 (9th Cir.1993))) (internal quotation marks and ellipses omitted). Because the

18. The Pentz and Siegel objectors also argue that the class notice was inadequate because it was unclear how much attorneys' fees class counsel would request. The Court already has found the form of notice adequate (Prelim. Approval Order ¶ 4), and, in any event, the class notice stated that counsel would request up to $5,380,000, which is the amount class counsel now seeks. See, e.g., In re Air Cargo Shipping Servs. Antitrust Litig., No. 06–MD–1775, 2009 WL 3077396, at *14 n. 15 (E.D.N.Y. Sept. 25, 2009) (rejecting the same argument as "unpersuasive since the maximum fee amount that would be requested by counsel was the subject of worldwide direct and publication notice and the fee amount ultimately recommended … and sought by Settlement Class Counsel was filed with the court and posted on the Settlement Administrator's website notifying the class of information about this action"); see also Carlson v. Xerox Corp., 355 Fed.Appx. 523, 525–26 (2d Cir.2009).

19. The Pentz and Siegel objectors make additional arguments with respect to the calculation of attorneys' fees under the lodestar method. The Pentz objector argues, without any citation to authority, that the court should analyze class counsel's fee request under the lodestar method because the benefit to the class is non-monetary and class counsel's fee is not to be drawn from a common fund. As the Court has found the requested fee reasonable under both the percentage and lodestar methods, the Court need not decide this issue. In addition, the Siegel objectors argue, without any citation to authority, that a lodestar multiplier of 3.3 is excessive and that any multiplier in excess of 2 is "subject to scrutiny." (Final Siegel Objections, at 1.) The Court rejects this broad proposition and, having considered the requested fee in this case in light of the Goldberger factors, concludes that the fee is reasonable.

20. Similarly, with respect to the supplemental notice sent to the 58,772 class members who did not initially receive short form notice, counsel stated that additional information on the Settlement has been provided to all who requested it.

Court finds that the method of providing notice to the class, which included newspaper publication (*see* Carton Aff., Ex. A, at 12–13), was reasonable, and because the Court has agreed to consider timely any opt-out requests from class members who received late notice, the Court finds the objections to late delivery of class notice to be without merit.[21]

Finally, several class members object to class action settlements in general and to this Settlement in particular, arguing, for example, that Costco customers should have known about Costco's renewal policy. Such objections are irrelevant to this Court's consideration of the fairness, reasonableness, and adequacy of the Settlement under Rule 23. *See, e.g., Glass v. UBS Fin. Servs., Inc.,* No. C–06–4068, 2007 WL 221862, at *7–8 (N.D.Cal. Jan. 26, 2007) (finding that similar objections do not challenge the fairness of the settlement but rather the filing of the lawsuit itself, and that the objectors were free to opt out).

\* \* \*

In sum, the Court finds that all of the objections, in whatever form raised,[22] are without merit.

### III. CONCLUSION

For the reasons set forth above, plaintiffs' motion for approval of the Settlement and for an award of attorneys' fees and enhancement awards is granted in its en-

tirety. The parties shall submit a proposed judgment by April 23, 2010.

SO ORDERED.

---

21. Furthermore, the Court notes that when it became apparent that notice was not sent to some class members due to computer error, defendant promptly notified the Court and provided supplemental notice to those class members affected.

22. One class member, Jonathan Lee Riches, filed an objection on June 25, 2009, stating that he is "outraged" by the Settlement be-

cause Costco continues to violate unspecified "federal laws and statutes." He also purports to move to intervene in the action under Rule 24 of the Federal Rules of Civil Procedure and to be listed as a plaintiff on the docket. Because Mr. Riches provides no detail as to his allegations or reasons as to why he should be allowed to intervene or serve as a named plaintiff, the Court denies Mr. Riches's purported motions.